IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| PALMETTO HEALTH CREDIT UNION, | ) | C.A. No. 3:08-cv-3848-CMC |
| | ) | |
| Plaintiff, | ) | OPINION AND ORDER |
| | ) | ON MOTION FOR |
| vs. | ) | SUMMARY JUDGMENT |
| | ) | |
| OPEN SOLUTIONS INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Through this action, Plaintiff, Palmetto Health Credit Union ("Palmetto"), seeks recovery from Defendant, Open Solutions Inc. ("OSI"), for claims arising from or relating to a contract ("Agreement") through which OSI agreed to provide computer programs, hardware and related services. Palmetto's claims include four contract-based claims (breach of contract, breach of the duty of good faith and fair dealing, breach of express warranty, and breach of contract accompanied by a fraudulent act), two tort-based claims (fraud and negligent misrepresentation based, in part, on alleged representations predating execution of the Agreement), a statutory claim for unfair trade practices (under South Carolina or Connecticut law), and equitable claims for rescission, unjust enrichment and declaratory relief. Open Solutions, in turn, asserts counterclaims for breach of contract, breach of the duty of good faith and fair dealing, unfair trade practices under South Carolina or Connecticut law, and an equitable claim for unjust enrichment.

The matter is now before the court on cross-motions for summary judgment/partial summary judgment. For the reasons set forth below, the court grants both motions in part and denies both motions in part, leaving for trial only the claims and counterclaims for (1) violation of the Connecticut Unfair Trade Practices Act, (2) breach of contract (for damages and declaratory relief), and (3) breach of the covenant of good faith and fair dealing. The court further determines that the

surviving claims are governed solely by Connecticut law. This latter determination precludes recovery of enhanced damages for breach of contract accompanied by a fraudulent act as no such enhancement is available under Connecticut law.

**STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). When the nonmoving party has the ultimate burden of proof on an issue, the moving party must identify the parts of the record that demonstrate the nonmoving party lacks sufficient evidence. The nonmoving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

2

**DISCUSSION**

**I.     Governing Law**

The Agreement includes a choice-of-law provision which reads, in relevant part, as follows: "This Agreement, and any disputes arising hereunder, shall be governed, interpreted, construed and enforced in all respects in accordance with the laws of the State of Connecticut except for its conflicts of laws rules." Both parties agree that this provision governs the contract-based claims. Palmetto, however, maintains that the language is not sufficiently broad to support application of Connecticut law to either party's statutory unfair trade practices or tort-based claims. Palmetto further argues that its claim for breach of contract accompanied by a fraudulent act sounds in tort and, therefore, is not subject to the choice-of-law provision.

The court will assume without deciding that Palmetto's claims for fraud and negligent misrepresentation fall outside the choice-of-law provision to the extent the alleged misrepresentations predate entry of the Agreement. However, for reasons discussed below, the court concludes that Palmetto has failed to proffer evidence to support these claims. The court, likewise, presumes that the equitable claim and cross-claim for unjust enrichment fall outside the choice-of-law provision as such a claim could go forward only in the absence of an express contract. *See infra* § III. B. The conclusion that the fraud and negligent misrepresentation claims cannot go forward and related conclusion that the Agreement is not subject to rescission (*infra* § III. A.), however, preclude pursuit of the unjust enrichment claim because these conclusions leave the Agreement in place. The remaining claims and counterclaims are either entirely dependent on or so intricately linked with the Agreement as to constitute a "dispute arising [under]" the Agreement.

It follows that Connecticut law governs all claims other than the claims for fraud, negligent misrepresentation, or unjust enrichment which are disposed of below.[1]

## II. Tort Claims (Fraud and Misrepresentation)

OSI asserts that it is entitled to summary judgment on Palmetto's claims for fraud and negligent misrepresentation because there is no evidence that any of its agents or employees made a false statement of fact to any agent of Palmetto. Dkt. No. 92 at 9-12. In addition to noting the absence of evidence, OSI cites to the deposition testimony of the four Palmetto employees involved in formation and performance of the contract (predating a stop-work order issued by Palmetto). Each of these four individuals conceded that they were not aware of any lies or other intentionally false statements by any agent of OSI.

In response, Palmetto argues that these concessions are not binding for two reasons: first, the witnesses only stated a "subjective belief . . . at a particular point in time"; and, second, the witnesses were not speaking as Palmetto's Fed. R. Civ. P. 30(b)(6) representatives. Dkt. No. 94 at 22. The court will assume without deciding that Palmetto is correct that these concessions are not dispositive. This does not, however, relieve Palmetto of its obligation to direct the court to *some* evidence of an actual misrepresentation of existing fact. Palmetto's arguments as to these causes of action is, however, devoid of any reference to supporting evidence. *See id.* at 21-23.[2]

---

[1] The court rejects Palmetto's argument that applying Connecticut law to the remaining claims would impermissibly (and unconstitutionally) allow Connecticut to regulate conduct beyond its own borders. There are multiple connections between the underlying events and Connecticut, the most critical being the choice-of-law provision found in the underlying contract. This choice is hardly random given that Open Solutions' principal place of business is in Connecticut. In addition, certain actions relevant to the Agreement either emanated from or were directed to Connecticut (*e.g.*, the termination letter sent by Palmetto to OSI in Connecticut).

[2] Palmetto's argument as to these claims consists of recitation of the elements of the claims (*id.* at 21) and discussion of why the "concessions" are not dispositive (*id.* at 22-23). There is no

4

The court has, nonetheless, reviewed Palmetto's statement of facts to determine if there is evidence to support the fraud and misrepresentation claims. The only suggestion of such evidence is found in references to testimony by Palmetto's former president regarding his "recollection of what [Palmetto was] contracting for" which included an "understanding" that the system would have a "GUI interface [with] no DOS-based parts." Jenkins dep. at 146 (cited in Dkt. No. 94 at 2-3). By this, Jenkins meant that he expected an entirely "point and click" functionality. *Id.* Jenkins also testified that he later "realized" that the system was only partially GUI, and that this was not what he "believed [Palmetto] had contracted to purchase." Jenkins dep. at 145-46. Nothing in Jenkins' cited testimony suggests that the difference between his initial expectations and later realization was the result of an affirmative misrepresentation of existing fact by an OSI representative. To the extent this is a possible explanation, it is foreclosed by Jenkins' concession that he did not believe he was ever lied to by someone at OSI.

Palmetto also quotes deposition testimony of the OSI representative who demonstrated the product. This individual stated that, at the time of the demonstration, OSI expected to have a fully GUI product ready for release by the time of Palmetto's planned conversion. This would have avoided the need for a later upgrade of the "back office" portion of the program (the portion which was not GUI). Dkt. No. 94 at 3-4 (quoting Shelby dep. at 113-14, 146, 175). This testimony suggests a reasonable basis for Jenkins' belief that Palmetto should have received a fully GUI system at the time of the initially-scheduled conversion. Combined with other evidence, it may support a finding that OSI may have made commitments it was later unable to fulfill. Thus, this evidence may support a claim for breach of contract. In contrast, it does not support a finding that

---

discussion of any affirmative evidence of misrepresentation.

5

OSI's representative made a misrepresentation of existing fact either as to the then-existing status of the product or as to OSI's intent to fulfill its commitments.

Absent evidence of a false statement of fact, Palmetto cannot establish that OSI made a false representation of material fact with knowledge of its falsity or reckless disregard of its truth or falsity – the first four elements of a claim for fraud – or a false representation – the first element of a claim for negligent misrepresentation. *See* Dkt. No. 94 (Palmetto's recitation of elements of claims). The court, therefore, concludes that OSI is entitled to summary judgment on Palmetto's causes of action for fraud and negligent misrepresentation.[3]

## III. Claims and Counterclaims for Equitable Relief

### A. Rescission

Palmetto Health seeks to rescind the Agreement based on two arguments: first, that the Agreement was procured by fraud; and, second, that the breach of contract was so fundamental and substantial as to defeat the purpose of the contract. Dkt. No. 94 at 36-37. Summary judgment on the fraud cause of action precludes the first basis for rescission. As to the second argument, Palmetto relies on claims that OSI "never performed" its end of the bargain. For reasons discussed below, the court finds genuine issues of material fact as to which party breached the contract. Even

---

[3] As summarized above, the references to possible "misrepresentations" found in Palmetto's statement of facts focus on the period predating entry of the Agreement. Dkt. No. 94 at 3-5 (discussing sales presentation and materials and Jenkins' resulting expectations). Palmetto's statement of facts also includes a few references to later statements which Palmetto suggests may have been false, most particularly regarding the status of beta testing of a fully GUI system, and were passed on to Palmetto. Dkt. No. 94 at 8-9. The court will assume without deciding that this evidence supports an inference that a false statement was made and passed on to Palmetto by an agent of OSI. Even with this assumption, there is insufficient evidence to support an independent claim for fraud or negligent misrepresentation because Palmetto has not directed the court to evidence of the remaining elements of these claims. These allegations may, nonetheless, be of relevance to other claims including Palmetto's claims for breach of the duty of good faith and fair dealing and violation of the Connecticut Unfair Trade Practices Act.

6

should a jury conclude that there was a breach, and that OSI was wholly responsible for that breach, the court could not conclude that the breach was so fundamental and substantial as to defeat the purpose of the contract.[4] Thus, the record does not support equitable relief in the form of rescission.

### B. Unjust Enrichment

Palmetto has asserted a claim and OSI a counterclaim for unjust enrichment. *See generally Ellis v. Smith Grading & Paving, Inc.*, 366 S.E.2d 12, 14 (S.C. App. 1988) ("Unjust enrichment is an equitable doctrine, akin to restitution, which permits the recovery of that amount the defendant has been unjustly enriched at the expense of the plaintiff." ). Recovery under a theory of unjust enrichment is available only where the rights and responsibilities at issue are not governed by an express contract. *See generally* 66 Am. Jur. 2d Restitution and Implied Contracts § 25 (2001) ("Although there can be no implied contract on a point fully covered by an express contract and in direct conflict therewith, there may be an implied contract on a point not covered by an express contract.").

In light of the rulings above, there is no basis on which to void or rescind the written Agreement which is a detailed contract addressing not only the obligations of the parties but also various limitations on the available remedies. While the parties have directed the court to evidence of possible consensual modifications of the Agreement, neither has pointed to evidence of any benefit conferred on the other which was not conferred based on the express contract (including as

---

[4] There is evidence from which a jury could conclude that OSI failed to deliver the promised product by the date initially intended or within a reasonable time thereafter. The evidence does not, however, support a finding that OSI was "never" able to deliver the promised product. Instead, it reflects Palmetto's decision to delay the conversion for a significant period of time (after OSI's earlier failures), followed by Palmetto's decision to terminate the contract. Whether or not the stop-work directive and later termination were justified, they preclude an argument that OSI was "never" able to deliver the promised product.

7

modified by consent). The claims and counterclaims are, therefore, controlled by an express contract which precludes recovery under a theory of unjust enrichment.

### C. Declaratory Judgment

OSI argues that Palmetto's claim for declaratory relief should be denied based, in part, on the doctrines of res judicata or collateral estoppel. Palmetto, in turn, argues that these defenses should be rejected as a matter of law. The court agrees that neither of these doctrines are applicable in the present case as the underlying "ruling" on which OSI relies is an earlier ruling *in this same action*, not some separate final judgment. *See* Dkt. No. 18. Moreover, neither the ruling in that docket text order nor the later decision on a motion to dismiss the amended complaint preclude pursuit of the claim for declaratory relief.[5] The court, therefore, grants summary judgment to the extent of rejecting these defenses as a matter of law.[6]

That said, it is questionable whether there is any need for declaratory relief. The underlying issues of whether there has been a breach of contract and, if so, which party is responsible for that breach will be resolved by the jury in the context of the parties' contract-based claims for damages. Under these circumstances, pursuit of declaratory relief may be mere surplusage. On the other hand,

---

[5] The ruling at issue is found in a docket text order which granted dismissal of the original complaint without prejudice based, in part, on its presentation *solely* as a claim for declaratory relief, despite pursuit of substantial damages. Dkt. No. 18. Palmetto, thereafter, filed an amended complaint which added various causes of action but also included a claim for declaratory relief. OSI responded with a second motion to dismiss which the court addressed in some detail, ultimately denying the motion without addressing the viability of the claim for declaratory relief. Dkt. No. 30. Thus, there is no prior ruling in this case which disposes of the claim for declaratory relief.

[6] OSI argues that the court cannot dispose of an affirmative defense on motion for summary judgment. The law in the Fourth Circuit is, however, to the contrary. *See Thomas M. Gilbert Architects, P.C. v. Accent Builders And Developers, LLC*, 2010 WL 1804135 (4th Cir. May 6, 2010) (upholding grant of summary judgment as to affirmative defenses); *see also* Charles A. Wright *et al.,* 10B Federal Practice and Procedure § 2737 (3d ed.) (concluding that unsupported affirmative defenses may be resolved under Fed. R. Civ. P. 56(d)).

OSI has argued that Palmetto has an ongoing obligation to make payments for a period of several years. This may suggest a basis for declaratory relief not covered by the other causes of action. The court will, therefore, leave this issue open until the conclusion of trial as it is unlikely that any confusion or added complexity will result from deferral of this decision.

### IV.  Contract-Based Claims

#### A.  Breach of Contract

The court finds genuine issues of material fact as to whether the contract was breached, if so, by which party, and the extent of any resulting damages. While the court recognizes that the contract includes provisions limiting damages, it concludes that proper application of these provisions may require resolution of disputed issues of fact.[7] As appropriate, the court may address these issues on motion for judgment as a matter of law prior to submission of the matter to the jury, through special interrogatories, or on post-trial motions to limit damages.

#### B.  Breach of Express Warranty

The court grants OSI's motion for summary judgment as to Palmetto's claim for breach of express warranty for the reasons argued by OSI. *See* Dkt. No. 92 at 35 (memorandum page 32). Notably, Palmetto has failed to respond to OSI's arguments as to this claim, instead offering a single combined argument as to "Breach of Contract/Warranty. That argument makes no mention of the warranty claim save in the initial heading. Dkt. No. 94 at 29-33.

#### C.  Breach of Contract Accompanied by a Fraudulent Act

---

[7] These limitations are addressed in the order denying OSI's motion to dismiss Palmetto's amended complaint. *See* Dkt. No. 30 at 3-5 (quoting limitations and related provisions). As there noted, the contractual limitations are substantial. *Id.* at 9-10 (discussing impact of limitations on Palmetto's claim for damages). Although the court has now resolved some claims which might fall outside of or avoid these limitations (*e.g.*, the claim for fraud), issues remain as to how the limitations may apply in the event Palmetto prevails on one or more of its remaining claims.

9

OSI argues that Connecticut law does not recognize the enhanced damages theory often referred to in South Carolina as "breach of contract accompanied by a fraudulent act." *See* Dkt. No. 92 at 36. Palmetto offers no contrary authority, instead arguing that the court should apply South Carolina law as to this claim. *See* Dkt. No. 94 at 34-35. For reasons set forth above, the court finds Connecticut law controlling as to this theory of recovery (whether characterized as a separate claim or, more correctly, as a theory under which enhanced damages may be allowed for a breach of contract).[8] It follows that OSI is entitled to summary judgment as to this claim.

### D. Breach of the Covenant of Good Faith and Fair Dealing

Under Connecticut law, the covenant of good faith and fair dealing is implied in every contract. *Landry v. Spitz,* 925 A.2d 334, 341-42 (Conn. App. 2007).[9] This covenant is breached when one party takes actions in bad faith which impede the right of the other party to receive benefits reasonably expected under the contract. *Id.* (explaining that "[b]ad faith . . . implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Bad faith means more than mere negligence; it involves a dishonest purpose."). On the present record, the court concludes that there are genuine issues of material fact as to whether one or both parties have breached this covenant.

### V. Unfair Trade Practices

---

[8] Under South Carolina law, proof of a fraudulent act accompanying a breach of contract provides a basis for enhancing damages for breach of contract. It is not, as Palmetto seems to suggest, a separate tort-based theory of recovery which might survive the contractual choice-of-law provision. Even if deemed a separate cause of action, the claim would be so clearly dependent on proof of breach of the Agreement that it would, necessarily, "arise under" the Agreement and be subject to the Agreement's choice of law provision.

[9] *Landry* suggests that a claim for breach of this covenant may, in some circumstances, be pursued as a tort, and in others circumstances as a contract-based claim. *Id.* at n.6.

Palmetto asserts a single, generic claim for "unfair trade practices." This claim is asserted, alternatively, under the South Carolina and Connecticut Unfair Trade Practices Act. Dkt. No. 19 (seventh cause of action). OSI, in contrast, asserts two separate but alternative counterclaims, one for violation of the Connecticut Unfair Trade Practices Act (CUTPA) and one for violation of the South Carolina Unfair Trade Practices Act (SCUTPA). Dkt. No. 44 (third and fourth counterclaims, respectively).

The unfair trade practices claim and counterclaims relate to the parties' dealings with regard to the Agreement and peripherally matters intricately associated with the parties' contractual obligations. The claim and counterclaims for unfair trade practices are, therefore, subject to the Agreement's choice-of-law provisions. Consequently, the only potential claim is under the CUTPA. The court, therefore, grants summary judgment as to OSI's fourth counterclaim (SCUTPA) and partial summary judgment as to Palmetto's seventh cause of action (to the extent it relies on SCUTPA).

To the extent either party asserts a claim or counterclaim under CUTPA (OSI's third counterclaim and aspects of Palmetto's seventh cause of action), the court finds genuine issues of material fact preclude entry of summary judgment. In reaching this conclusion, the court notes that proof of public impact is not required to support a claim under CUTPA. *See Fichera v. Mine Hill Corp.*, 541 A.2d 472, 473 n.2 (Conn. 1988) (noting that the "public interest requirement for a private action under CUTPA was eliminated by an amendment [which] became effective on June 8, 1984."). Instead, a party may recover if it demonstrates "substantial aggravating factors" which do more than "duplicate[] its breach-of-contract claim." *E.g.*, *Omni Corp. v. Sonitrol*, 303 Fed. Appx. 908, 911 (2d Cir. 2008); Dkt. No. 90-1 at 10 (citing additional cases for the same proposition); *see also A-G Foods, Inc. v. Pepperidge Farm, Inc.*, 579 A.2d 69 (1990) (holding that CUTPA addresses practices

that "offend[ ] public policy"; are "immoral, unethical, oppressive, or unscrupulous"; and cause "substantial injury to consumers" (internal quotation marks omitted)). In this case, both sides have proffered evidence of aggravating factors which go beyond mere breach (even intentional breach) of contract and allegedly caused damages beyond those directly attributable to the breach. Whether the alleged aggravating factors and resulting damages are sufficiently distinct from the allegations supporting the claim/counterclaim for breach of contract to support recovery under CUTPA cannot be determined on the present record. *See generally Flagg Energy Dev. Corp. v. Gen. Motors Corp.*, 709 A.2d 1075, 1088 (Conn. 1998) (affirming summary judgment on claims for misrepresentation and CUPTA where those claims rested on factual allegations identical to those set forth in a contract-based claim).

## VI. Pretrial Briefs–Supplemental Requirements

All of the claims which survive involve Connecticut law which suggests the need for additional pretrial briefing and special attention in preparation of the proposed jury charges. The court, therefore, directs that pretrial briefs be submitted two weeks in advance of jury selection which shall be held on September 10, 2010.[10] In addition to the usual requirements, the parties shall address the following issues: (1) whether breach of the covenant of good faith and fair dealing is a separate cause of action under Connecticut law; (2) what categories of damages are generally available under Connecticut law for each of the surviving claims/counterclaims; (3) what damages each party anticipates proving as to each claim /counterclaim; (4) what specific declaratory relief Palmetto seeks; and (5) whether and to what extent the damages sought under each cause of action are subject to contractual limitations.

---

[10] The deadlines set by this order control over any later deadlines which may be stated in a roster notice applicable to multiple cases.

Proposed jury charges addressing Connecticut law and the contractual provisions (including limitations on damages) shall be submitted with the pretrial briefs. Within three business days of submission of the pretrial briefs, the parties shall meet to compile a single proposed charge setting forth both the agreed charges and proposed alternatives (where there is disagreement as to wording or inclusion of specific charges). These charges shall be submitted to the court no less than one week prior to jury selection and shall be presented in the order in which the parties request that the charges be given.

## CONCLUSION

For the reasons set forth above, the cross-motions for summary judgment are granted in part and denied in part. As to Defendant Open Solution Inc.'s motion, the court grants summary judgment as to Palmetto Health Credit Union's claims for fraud, negligent misrepresentation, rescission, unjust enrichment, breach of express warranty, breach of contract accompanied by a fraudulent act, and violation of the South Carolina Unfair Trade Practices Act. This leaves the following claims by Palmetto for trial: breach of contract (for damages and declaratory relief), breach of the implied covenant of good faith and fair dealing, and violation of the Connecticut Unfair Trade Practices Act. As to Plaintiff Palmetto Health Credit Union's motion, the court grants summary judgment as to Open Solution Inc.'s counterclaims for violation of the South Carolina Unfair Trade Practices Act and unjust enrichment as well as the affirmative defenses of res judicata and collateral estoppel. This leaves the following counterclaims for trial: breach of contract, breach of the covenant of good faith and fair dealing, and violation of the Connecticut Unfair Trade Practices Act. All claims for trial are to be decided under Connecticut law.

**IT IS SO ORDERED.**

                                            **s/ Cameron McGowan Currie**  
                                            **CAMERON MCGOWAN CURRIE**  
                                            **UNITED STATES DISTRICT JUDGE**

**Columbia, South Carolina**  
**July 7, 2010**