IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| PALMETTO HEALTH CREDIT UNION, ) | C.A. No. 3:08-cv-3848-CMC |
| ) | |
| Plaintiff, ) | OPINION AND ORDER |
| ) | ON CROSS MOTIONS |
| vs. ) | FOR RECONSIDERATION |
| ) | |
| OPEN SOLUTIONS INC., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the court on cross motions to reconsider different aspects of the court's July 7, 2010 order (Dkt. No. 107) which granted in part and denied in part the parties' cross motions for summary judgment. For the reasons set forth below, both motions are denied.

**STANDARD**

The present motions seek reconsideration of pretrial rulings. Pretrial rulings remain subject to reconsideration by the trial court "and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). While this standard allows the trial court to conduct a *de novo* review of any of its prior rulings, countervailing considerations suggest the court should only modify its prior ruling when it is convinced either that a prior ruling was incorrect or that changes either in the record or the stage of the proceeding justify modification. *See generally* Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, 18A Federal Practice and Procedure § 4478.1 (2d ed. as supplemented through 2010) (discussing competing interests).[1]

---

[1] In short, the grounds for review of a pre-trial ruling are not as constrained as those under Rule 59 of the Federal Rules of Civil Procedure. *See generally Hutchinson v. Staton*, 994 F.2d 1076,

1

**DISCUSSION**

**I. DEFENDANT OPEN SOLUTIONS INC.'S MOTION TO RECONSIDER**

Defendant Open Solutions Inc. ("OSI") asks the court to reconsider its decision deferring resolution of how the contractual limitations on damages should apply to the remaining claims. *See* Dkt. No. 107 at n. 7. The court declines this request but notes that, at present, the court remains unconvinced by OSI's argument that the contractual limitations on damages necessarily preclude recovery of any damages on the remaining claims asserted by Plaintiff Palmetto Health Credit Union ("PHCU") based on PHCU's election to terminate the contract. *See* Agreement §§ 4.3, 4.4, 10.1, 10.2. As noted in the summary judgment order, the dismissal of some of PHCU's claims eliminates one of the bases for avoidance of the contractual limitations on damages. *See* Dkt. No. 107 at n.7. *See also* Dkt. No. 30 at 8 (discussing impact of contractual limitations on non-contract claims). However, as the court noted in its earlier order addressing these limitations:

> Even assuming all claims are subject to the liability limitations in Section 10, the court would not find as a matter of law that Section 4.3 precludes recovery of the otherwise available damages in the event of termination. Reading all provisions of Section 4 together, it would be at least reasonable to conclude that Section 4.3 simply precludes a claim for a "refund" based solely on the fact that a breach which justifies termination has occurred.

Dkt. No. 30 at 9 (noting, nonetheless, that damages would be limited by Section 10 of the Agreement). While the court will not foreclose the possibility, it is not yet persuaded that the contractual limitations preclude PHCU from recovery of any damages in the event it proves a breach by OSI.

---

1081 (4th Cir. 1993) (recognizing only three limited grounds for relief under Rule 59(e)–(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available earlier; or (3) to correct a clear error of law or prevent manifest injustice–and noting that a party's mere disagreement with the court's ruling does not warrant a Rule 59(e) motion).

## II. PHCU'S MOTION TO RECONSIDER

PHCU seeks reconsideration or clarification of the court's grant of summary judgment to OSI on PHCU's express warranty claims. In light of PHCU's suggestion that the court may have failed to consider some of its arguments in opposition to OSI's motion for summary judgment, the court has again read all referenced portions of the documents. Having done so, the court reaffirms its earlier decision, dismissing the warranty claims. The court will, however, clarify its ruling as set out below. This ruling substitutes for the earlier summary judgment ruling. *See* Dkt. No. 107 at 9.

The warranty provisions are found in Section 8.1 of the Agreement. As PHCU noted in its memorandum in opposition to summary judgment, one portion of this section applies to failures to perform to industry standards. Dkt. No. 94 at 11.[2] This section provides, in relevant part, as follows:

> 8.1 <u>OSI Warranty</u>. OSI represents and warrants to Client that (a) all of the professional services OSI performs under this agreement will be performed in a competent manner consistent with industry standards, provided, however, that Client must report any deficiencies in such professional services to OSI within ninety (90) calendar days of completion of the services in order to receive warranty remedies; . . . (d) the Licensed Software will perform on an appropriately configured computer substantially in accordance with the then-current documentation . . . . For any breach of Section 8.1(a), Client's exclusive remedy, and OSI's entire liability, shall be the re-performance of the applicable professional services and if OSI fails to re-perform such professional services as warranted, Client shall be entitled to recover the fees actually paid to OSI for the deficient professional services.

Agreement § 8.1.

After noting that its "claim for breach is not solely grounded in Section 8 of the Agreement," but extends to Sections 6 and Exhibit B, PHCU first addressed the ninety-day notice requirement, suggesting that there is no timeliness bar because "OSI never completed the services contracted for." In addition, PHCU suggested that it was not limited to re-performance because "assuming OSI re-

---

[2] The "arguments" which PHCU suggests the court may have overlooked are contained in the section headed "Factual Background." See Dkt No. 94 at 1, 11-13.

3

performed at all, the facts show that OSI did not successfully re-perform as warranted. Finally, PHCU suggests that OSI improperly limits the deficiencies of which notice was given by focusing on the deficiencies noted in a July 12, 2007 email from Eric Jenkins, just before his departure as PHCU's president. The only other documents expressly referenced are two documents written by Hansel Hart, Jenkins' replacement as president of PHCU. *See* Dkt. No. 94 at 12-13 (referencing exhibits 47 and 49 to King dep.).[3] PHCU describes these documents as evidence that, immediately on becoming president, Hart "immediately engaged with OSI to determine if there was a solution to the immense problem OSI had created. Dkt. No. 94 at 12 (noting Hart "formally related to OSI [PHCU's] concerns, reserved its rights, and offered to discuss the issues").

PHCU also refers to Section 8.1(d) in this section of its memorandum, noting that the only version of the software which was delivered did not perform at all because the computer that was delivered with it was not configured correctly for the version to be installed and because the credit union's data was never delivered. Dkt. No. 94 at 13. Based on the above, albeit in the "Factual Background" section of its memorandum, PHCU argues that, "[a]t worst, . . . there is a question of fact for the jury to determine regarding the nature of OSI's breaches of warranty and contract.[4]

---

[3] PHCU also states that it is "unclear why OSI chose [the July 12, 2007] email to trigger its alleged attempt to re-perform instead of the numerous other expressions of exasperation from PHCU over the previous sixteen months." Dkt. No. 94 at n.6. It does not, however, identify any of these earlier "expressions of exasperation" or explain how such an expression might be deemed an invocation of the warranty provisions of Section 8.1(a) of the contract.

[4] The actual discussion of the contract and warranty claims is found at pages 29-33 of PHCU's memorandum where the warranty is mentioned only in the introductory paragraph (in a listing of the contract-based causes of action) and in a sub-heading. Dkt. No. 94 at 29. Neither Section 8.1 of the Agreement nor the warranty are mentioned again in this section. Instead, PHCU addresses (1) general requirements for a breach of contract claim under Connecticut law; (2) OSI's argument that PHCU agreed to delays in performance and, therefore, cannot complain about those delays; and (3) OSI's argument that PHCU is barred by the limitations of liability and termination provisions of the contract.

The above arguments do not modify the result. First, the court rejects PHCU's argument that the requirement that it give "notice" of any claimed failures to meet industry standards arises only after OSI has fully performed. Such a reading of the Agreement would defeat the obvious purpose of the provision which is to allow a timely cure of problems as they arise. Thus, timely notice is required for PHCU to rely on Section 8.1(a) of the agreement.

OSI's motion for summary judgment identified a single document (Jenkins' July 12, 2007 email) as the only "notice" under Section 8.1(a). This shifted the burden to PHCU to direct the court to any other document or other evidence of such notice. The only documents identified were the two letters or emails from Hart. The court will consider all three documents here.[5]

The court will assume without deciding that Jenkins' email was sufficient notice of a claim of failure to meet industry standards as warranted by Section 8.1(a).[6] The stop-work order issued shortly thereafter, however, prevented re-performance, at least until that stop-work order was lifted. Presumably, PHCU offers the two communications from Hart as evidence either that the stop-work order was lifted or of additional notices of OSI's failure to meet industry standards. The first of these, Hart's January 24, 2008 memorandum (King dep. ex. 47), refers to some earlier meetings and states that "[i]t would serve no useful purpose to list the numerous problems and delays" in OSI's performance but acknowledges that "OSI is making a good faith effort to address and correct the problems[.]" The memorandum then states that although, in PHCU's view, OSI's past failures

---

[5] The court declines to consider any unidentified "expressions of exasperation." *See* Dkt. No. 94 at n.12.

[6] Although this email does not use the word "industry standard," and does not specifically invoke Section 8.1(a), it is specific as to the deficiencies and concludes that Jenkins has "lost faith in the Project Management skills being used to manage our conversion." Dkt. No. 92-14 at 2.

5

justify termination, PHCU is willing to look for a solution going forward subject to the condition "that the existing contract be modified to include more specificity with respect to timing and OSI's performance obligations and that some adjustment be made to account for the significant delay in the expected implementation of the system."

It is, in the first instance, doubtful that the January 24, 2008 memorandum constitutes notice of any breach of Section 8.1 given its failure to list any specific failure to meet an industry standard. It cannot serve as a lifting of the earlier stop-work order, given that the request for OSI's continued performance (or any "re-performance") is conditioned on modification of the Agreement.[7]

Hart's February 26, 2008 email (King dep. ex. 49) fares no better. This email reads, in part, as follows:

> [PHCU] had hoped that in responding [to PHCU's] previous communications about these concerns OSI would have indicated a willingness to propose a specific timetable for acceptable completion of the project backed-up by contractual remedies. At this point we believe we must consider all options and are gathering information about other data processing systems and are considering the use of another provider.

King dep. ex. 49. Despite these statements, Hart indicates a willingness to meet with OSI and refers to an attached list of specific items that need to be addressed if PHCU is to move forward with OSI.

The court will assume without deciding that the referenced "attached" list is adequate to give notice of a warranty claim under Section 8.1(a). The content of the letter does not, however, make an unqualified request for OSI to re-perform the relevant work. Instead, any request for re-performance is qualified by the demand for modification of the contract with respect to remedies.

---

[7] Hart's comment that he believed OSI was "making a good faith effort to address and correct the problems," is, likewise, insufficient to suggest that the stop-work order had been lifted at some earlier point in time. This is, most critically, because PHCU has presented no evidence that the stop-work order had been lifted, despite such evidence being within PHCU's control.

6

Having fully considered the above documents, the court reaffirms its earlier conclusion that PHCU did not properly invoke Section 8.1(a) of the Agreement because, to the extent it gave notice of any failure to meet industry standards, it did not allow OSI to cure the claimed deficiency under the terms of the contract either because of the stop-work order or because the request for re-performance was tied to a demand to modify the terms of the contract.

The ruling as to Section 8.1(d), rests on other grounds. This warranty provision promises that the "Licensed Software will perform on an appropriately configured computer substantially in accordance with the then-current documentation." Agreement § 8.1(d). The essence of PHCU's claims is not that some final delivered software failed to perform in conformity with the then-current documentation. Instead, it is that OSI either failed to deliver the promised software, or that the attempted delivery failed because of other deficiencies in OSI's related services (including hardware selection or advice and data conversion services). These claims do not arise under or require reference to Section 8.1(d), except, arguably, to the extent that Section 8.1(d) might help define what was to be delivered.

For the reasons set forth above, the court reaffirms its grant of OSI's summary judgment motion as to the breach of warranty claim. This precludes PHCU from relying on any argument (in support of its breach of contract claim or otherwise) that services provided under the contract failed to meet "industry standards" or otherwise breached Section 8.1(a) of the contract. Likewise, as noted above, PHCU may not rely on Section 8.1(d) except to the extent it helps to define the product that was to be delivered.

## CONCLUSION

For the reasons set forth above, both OSI and PHCU's motions to reconsider are denied. The court has, however, granted the alternative relief requested by PHCU by clarifying its prior ruling and the underlying reasoning.

**IT IS SO ORDERED.**

                                                  s/ Cameron McGowan Currie
                                                  CAMERON MCGOWAN CURRIE
                                                  UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
September 7, 2010