IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Palmetto Health Credit Union, | ) | |
| | ) | C/A No. 3:08-CV-03848-CMC |
| | ) | |
| Plaintiff, | ) | JURY INSTRUCTIONS |
| | ) | |
| v. | ) | |
| | ) | |
| Open Solutions Inc., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____) | | |

Members of the jury, now that you have heard all the evidence and the
arguments of the lawyers, it is my duty to instruct you on the law which applies to this
case. These instructions will be in three parts. First, I will explain the general rules
that control your duties as a jury. Second, I will explain the specific law that you must
apply to decide if the parties have proven the necessary elements of their claims. That
is, I will explain what Palmetto Health Credit Union must prove in order to be entitled
to a verdict in its favor on its claim and what Open Solutions Inc. must prove in order
to be entitled to a verdict in its favor on its claim. Finally, I will give you some rules
to guide your deliberations. As I go through these instructions, I will refer to the
parties as "Palmetto Health" and "Open Solutions." You have also heard them

1   referred to as PHCU and OSI.

2   **I. GENERAL RULES ON JUROR DUTIES**

3   **Duty to Follow Court's Instructions.** It is your duty to decide the facts. In

4   deciding what the true facts are you must consider all of the evidence that has been

5   presented during the trial as well as any facts that the parties have stipulated or agreed

6   are true.

7   You must also follow and apply the law as I explain it to you. You must do so

8   whether you agree with it or not.

9   You must not be influenced by any personal likes or dislikes, opinions,

10  prejudices or sympathy. That means that you must decide the case solely on the

11  evidence before you and according to the law. You will recall that you took an oath

12  promising to do so at the beginning of the case.

13  You must follow all of my instructions and not single out some and ignore

14  others. They are all equally important. And you must not read into these instructions

15  or into anything I may have said or done any suggestion as to what verdict you should

16  return–that is a matter entirely for you to decide.

17  **Burden of Proof.** At the beginning of the case, I explained that each side is

18  asserting a claim against the other. The party asserting a claim has the burden of

19  proving the claim by a preponderance of the evidence. That means that to recover on

its claim, Palmetto Health has to produce evidence which, considered in the light of all the evidence, leads you to believe that what it claims is more likely true than not. Likewise, to recover on its claim, Open Solutions must produce evidence which, considered in the light of all the evidence, leads you to believe that what it claims is more likely true than not. To put it differently, if you were to put the parties' evidence on opposite sides of the scales, each party would have to make the scales tip slightly to its side to meet this burden of proving its claim. If a party meets this burden as to its claim, then the verdict would be in favor of that party.

Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt. That is a stricter standard, *i.e.*, it requires more proof than a preponderance of evidence. The reasonable doubt standard does not apply to a civil case and you should therefore put it out of your mind.

**What Constitutes Evidence?** The evidence from which you are to decide what the facts are consists of:

(1) the sworn testimony of witnesses, both on direct and cross-examination, regardless of who called the witness;

(2) the exhibits which have been received into evidence; and

(3) any facts to which all the lawyers have agreed or stipulated.

**What Is Not Evidence?** Certain things are not evidence and you may not

1    consider them in deciding what the facts are. I will list them for you:

2    (1) Arguments and statements by lawyers are not evidence. The lawyers are not

3    witnesses. What they have said in their opening statements, closing arguments and

4    at other times is intended to help you interpret the evidence, but it is not evidence. If

5    the facts as you remember them differ from the way the lawyers have stated them,

6    your memory of them controls.

7    (2) Questions and objections by lawyers are not evidence. Attorneys have a

8    duty to their clients to object when they believe a question is improper under the rules

9    of evidence. You should not be influenced by the objection or by my ruling on it.

10    (3) Testimony that has been excluded or stricken, or that I have instructed you

11    to disregard, is not evidence and must not be considered. In addition, if testimony or

12    exhibits have been received only for a limited purpose, you must follow the limiting

13    instructions I have given.

14    (4) Anything you may have seen or heard when the court was not in session is

15    not evidence. You are to decide the case solely on the evidence received at the trial.

16    **Direct versus Circumstantial Evidence.** There are two kinds of evidence:

17    direct and circumstantial. Direct evidence is direct proof of a fact, such as testimony

18    of an eyewitness. Circumstantial evidence is indirect evidence, that is, proof of a

19    chain of facts from which you could find that another fact exists, even though it has

1    not been proved directly.

2         Let me give you an example of circumstantial evidence. If you put a mouse in

3    a paper bag and left it for awhile, then came back and found a small hole in the bag

4    and no mouse, you would have circumstantial evidence that the mouse chewed his

5    way out of the bag. On the other hand, if you had a cat, and a big hole in the bag, and

6    no mouse, you might reach a different conclusion. In either case, you would consider

7    all of the circumstantial evidence in light of reason, common sense and your own

8    experience to decide what facts were most likely true. Of course, if you had a video

9    of the bag or an eyewitness, you might have direct evidence of what happened which

10   you could also consider.

11        The law permits you to give equal weight to the direct and circumstantial

12   evidence presented to you, although it is up to you to decide how much, if any, weight

13   to give to any evidence. In deciding what weight to give the evidence, and whether

14   to accept any evidence as true, you should apply your own reason, common sense, and

15   experience.

16        **Factors to Consider in Weighing Evidence.** In deciding what the facts are,

17   you must consider all the evidence. In doing this, you must decide which testimony

18   or other evidence to believe and which not to believe. You may disbelieve all or any

19   part of any witness's testimony. In making that decision, you may take into account

a number of factors including the following:

(1) Was the witness able to see, or hear, or know the things about which that witness testified?

(2) How well was the witness able to recall and describe those things?

(3) What was the witness's manner while testifying?

(4) Did the witness have an interest in the outcome of this case or any bias or prejudice concerning any party or any matter involved in the case?

(5) How reasonable was the witness's testimony considered in light of all the evidence in the case?

(6) Was the witness's testimony contradicted by what that witness has said or done at another time, or by the testimony of other witnesses, or by other evidence?

In deciding whether or not to believe a witness, keep in mind that people sometimes forget things. You need to consider therefore whether a contradiction is an innocent lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or with only a small detail.

You should consider the other evidence presented in a similar fashion. That is, you should apply all that you know about the case and about the particular item of evidence to decide whether it is truthful or accurate as well as to determine its true meaning and importance to the case.

1    You have heard testimony from a person described as an expert. A person who,

2    by education and experience, has become expert in some field may state his opinion

3    on matters in that field and may also state his reasons for the opinion.

4    Expert opinion testimony should be judged just as any other testimony. You

5    may accept it or reject it, and give it as much weight as you think it deserves,

6    considering the witness's education and experience, the reasons given for the opinion,

7    and all the other evidence in the case.

8    **Use of Depositions.** During this trial, you have heard and seen some testimony

9    presented by deposition. We use depositions to present the testimony of a witness

10   who, for some reason, is not present to testify. Sometimes the deposition is presented

11   by videotape and sometimes just by reading from a transcript. In either case,

12   deposition testimony is entitled to the same consideration and, insofar as is possible,

13   is to be judged as to credibility and weighed by you in the same manner as if the

14   witness had been present.

15   **Number of Witnesses Not Determinative.** The weight of the evidence

16   presented by each side does not depend on the number of witnesses testifying on that

17   side or the other. You must consider all the evidence in the case, and you may decide

18   that the testimony of a smaller number of witnesses on one side has greater weight

19   than that of a larger number on the other.

1    **Demonstrative Exhibits.**  Both during the presentation of evidence and during

2    opening and closing arguments you have seen some charts and other things such as

3    some pieces of computer equipment which are demonstrative.  These things are not

4    evidence but are only offered to help you understand or visualize the evidence. You

5    will not have these items with you for inspection during your deliberations.

6    **Business Entity as Party.**  One of the parties to this lawsuit is a corporation

7    and the other is a credit union.  Corporations and credit unions are not natural persons

8    but are still legal persons.  All persons are equal before the law, and business entities

9    such as corporations and credit unions, whether large or small, are entitled to the same

10   fair and conscientious consideration as any other person.

11   A corporation and a credit union can only act through those individuals who are

12   its agents.  These agents can include but are not limited to employees and officers of

13   the business.  A business entity is responsible for the actions of its agents if the actions

14   in question occur while the agent is operating within the scope of his duties, authority,

15   or employment with the corporation or credit union.

16   ## II.  CASE-SPECIFIC CHARGES

17   **A.    CLAIMS**

18   **Introduction.**  As I explained on the first day of trial, Palmetto Health brought

19   this lawsuit alleging that Open Solutions breached an agreement to provide computer

8

1    software, hardware, and related services.  Open Solutions responded to the lawsuit by

2    denying these allegations and alleging that Palmetto Health, rather than it, had

3    breached the agreement.  Both sides also alleged that the other had acted in bad faith

4    as well as unfairly and deceptively and each side denied these allegations.

5         Through the course of these proceedings, the attorneys and I have been able to

6    narrow down the claims somewhat so that you are only going to be asked to resolve

7    one claim by each party against the other for Breach of Contract.  I will now explain

8    the law that you should apply to decide this claim..

9         In order to prove a claim, the party asserting the claim must establish every

10    element of the claim.  Each party denies some or all of the factual allegations made

11    by the other party as well as that the alleged facts satisfy the elements of the claim

12    asserted against it.  In addition, both parties assert affirmative defenses.

13         An affirmative defense is a set of facts which, if proven, would defeat a claim

14    even if the party asserting the claim proves all elements of that claim.  I will explain

15    the affirmative defenses to you after I explain the elements of the parties' claims.

16    **Breach of Contract**

17         A contract is an agreement enforceable at law. Open Solutions Inc. and

18    Palmetto Health Credit Union agree and stipulate that they entered into an express

19    written contract.   A copy of that contract, which is also referred to as the

9

1    "Agreement," has been marked as an exhibit, and you will have this exhibit with you

2    in the jury room during your deliberations.

3        **Elements.**  To prove a breach of contract claim, a party must prove three

4    elements by a preponderance of the evidence:

5            (a)    that there was a contract between the parties;

6            (b)    that one party breached that contract; and

7            (c)    that the breach was material.

8        A breach of a contract is material if it deprives a party of a substantial benefit

9    that the party reasonably expected to receive under the terms of the contract.

10       **Meaning of Contract Terms.**  While the parties agree that they entered an

11   express written contract, they disagree as to the meaning of some of the contract's

12   terms and requirements.  Unless I have given you an instruction as to the meaning of

13   the particular term or requirement, it will be for you to resolve any disputes as to the

14   contract's meaning.  In resolving such a dispute, you should determine what the

15   parties to the contract intended when they entered the contract.

16       The first source for determining the parties' intent is the contract itself.  That

17   is, you should look at the particular contract language which is in dispute, read in the

18   context in which it is presented.  You should also consider any other contract

19   provisions which might shed light on the meaning of the disputed term or language.

1    Unless it would lead to an unreasonable interpretation, you must assume that all

2    language of the contract is necessary.   Thus, you should try to read the term or

3    language so that it fits into and does not contradict or conflict with other provisions

4    in the contract.

5          As you interpret the words used in the contract, you should consider the parties'

6    situation and the circumstances surrounding the making of the contract.  You may also

7    consider the motives of the parties and the ends that they sought to accomplish by

8    their contract.  However, the circumstances surrounding the making of a contract, the

9    purposes that the parties sought to accomplish, and their motives cannot prove an

10   intent contrary to the plain meaning of the language in the contract.

11         In short, while you should consider all of these things in deciding what the

12   parties intended by their written words, you may not remake the contract or change

13   its terms.  You may only interpret them consistently with the written words in light of

14   these other factors.

15         **Other documents.**  If you find that the contract refers to some other document

16   or documents in such a manner as to establish that the parties intended to make the

17   terms and conditions of such other document or documents part of the contract, then

18   you should interpret the contract to include the referenced document or documents.

19   The documents incorporated do not need to be attached to the contract nor signed nor

1    initialed to be part of the contract unless the contract requires these actions.

2         If you find that other document(s) should be considered a part of the contract,

3    then you should construe the contract with the referenced document(s) using the rules

4    which I have given you for interpreting contracts.  However, in the absence of an

5    express provision, incorporated documents may neither expand nor restrict the

6    obligations of the parties under the written terms of the body of the contract.

7         **Material Breach.** Open Solutions and Palmetto Heath each claim that the other

8    failed to perform its responsibilities under the contract and that such failure was a

9    material breach of the contract.  As I have already explained, a breach of contract is

10   material if it deprives a party of a substantial benefit that the party reasonably

11   expected to receive under the terms of the contract.  If you find that one party deprived

12   the other of a substantial benefit reasonably expected under the contract, then you will

13   find that party materially breached the contract.

14        **Prior Breach.**  Only one party can recover for breach of contract.  As a rule,

15   a party guilty of a material breach of contract cannot complain if the other party

16   subsequently refuses to perform.  The party who breached first can neither insist on

17   performance by the other party nor maintain an action against the other party for a

18   subsequent failure to perform.  This is because a material breach relieves the other

19   party of the obligation to perform.  When a contract is not performed, the party who

is guilty of the first material breach assumes all the liability for nonperformance. If you find that one party breached the contract first and that such breach has not been waived, the first-breaching party cannot recover any damages for breach of contract.

**Substantial Performance.** Both Open Solutions and Palmetto Health claim that they have substantially performed the contract. In other words, each side asserts that any nonperformance on its part was insubstantial and not a material breach.

A party to a contract need not comply exactly with the terms of a contract in order to have substantially performed. Instead, a party substantially performs under a contract if its performance is so similar to the required performance that it is nearly equivalent to the performance for which the parties bargained. In other words, a party substantially performs when any deviation from the contract is minor and unimportant and does not seriously impair the purpose of the provision of the contract in question. By contrast, if a party has not complied with a material term of the contract, then it has not substantially performed.

**Timeliness.** The parties in this case each contend that the other party did not perform its responsibilities under the contract in a timely manner and that the resulting delay constituted a material breach. The contract includes an implied agreement that both parties would perform their responsibilities under the contract within a reasonable time. The law does not specifically define "reasonable time." It is for you

13

1    to decide whether each party performed its responsibilities in a "reasonable" time and

2    whether any failure to do so constitutes a material breach. What is reasonable depends

3    on the nature, purpose and circumstances surrounding performance.

4         In addition, the fact that the contract may have stated a time for performance

5    is not necessarily determinative. The law recognizes that circumstances may change

6    during the performance of a contract which may relieve a party from strict compliance

7    with deadlines set by the contract. For example, if you find that the parties agreed to

8    change a deadline for performance, then you may not find that failure to meet an

9    earlier deadline was a breach of contract.

10    **Interference.** In deciding whether there has been a material breach, you should

11    also consider whether either party prevented or interfered with the other party's

12    performance. Prevention of the other party's performance is itself a material breach

13    of contract which entitles the other party to damages and excuses further performance

14    by that other party. Thus if Party A interferes with Party B's performance, then Party

15    B is excused from further performance and may also seek damages from Party A for

16    breach of contract.

17    **Rejected Tender of Performance.** Similarly, if a party tenders performance,

18    and the tender is refused by the other party to the contract, then the tendering party's

19    obligations under the contract are discharged. A "tender" is a valid and sufficient

1   offer to perform under a contract.  To be valid and sufficient, the offer of performance

2   must be unconditional.

3          Likewise, if one party refuses to perform under the contract, the other party is

4   not obligated to perform its promise, and such nonperformance does not render it

5   liable in damages.  A refusal by one party to perform eliminates the necessity of a

6   tender of performance by the other.

7          **Termination and Failure to Cure.**  The contract at issue in this case includes

8   a termination provision that allows either party to terminate the contract upon thirty

9   calendar days prior written notice to the other party in the event of a breach of a

10  material provision of the Agreement, unless during that thirty day period the

11  breaching party cures its breach.  Palmetto Health asserts that it gave Open Solutions

12  notice of a breach and Open Solutions failed to cure that breach within thirty days.

13  Open Solutions, by contrast, asserts that any termination notice was defective because

14  the notice failed to specify the nature of the breach.  Open Solutions also asserts that

15  it was never given an opportunity to cure.

16         If you find that Open Solutions breached the contract, that Palmetto Health gave

17  proper termination notice based on the breach, and that Open Solutions was given the

18  opportunity but failed to cure within thirty days of the notice, then you would find that

19  Open Solutions, rather than Palmetto Health, was in breach of contract.  Under these

circumstances, an offer by Open Solutions to perform at some later time would have no effect on a prior breach.

On the other hand, you would find that Palmetto Health, rather than Open Solutions, was in breach of the contract if you find any of the following: (1) there was no material breach as of the date of Palmetto Health's termination letter; (2) Palmetto Health's notice of breach was defective; (3) Palmetto Health had already breached the contract by refusing to perform under the Agreement or by preventing Open Solutions' performance under the Agreement; or (4) Open Solutions either cured the asserted breach or was not given an opportunity to cure.

## B.    DEFENSES

**General Denial.** Each party has offered several defenses in this case. The first defense is what is known as a general denial. By this, the party against whom the claim is asserted simply says that it denies the material allegations of the complaint. The general denial places the burden of proof upon the party asserting the claim to come forward with evidence to prove these material allegations.

**Affirmative Defenses.** In addition, the parties assert several affirmative defenses. The burden of proof is reversed as to any affirmative defenses. Just as the proponent of a claim has the burden of proving every element of that claim, the

1    opposing party has the burden of proving all elements of any affirmative defense

2    offered to the claim.

3        I will now explain the affirmative defenses to you in two groups: first, the

4    affirmative defense asserted by both parties and then those asserted by Open

5    Solutions. The order in which I explain these defenses does not have any significance.

6    You should consider each of the defenses independently and equally.

7    **1.    Defense Asserted by Both Parties**

8    **Failure of Conditions Precedent.**    A contract often includes one or more

9    "conditions precedent." A condition precedent is a fact or event which must exist or

10   occur before there is a right to a performance under the contract.  In this case, both

11   sides argue that its non-performance is excused because some condition precedent to

12   its duty to perform never occurred.

13       A condition precedent does not create any right or duty in and of itself, but is

14   merely a limiting or modifying factor.  Whether performance of a certain act is a

15   condition precedent depends on the intent of the parties as expressed in the contract

16   read in light of the surrounding circumstances.  If a condition precedent is not

17   fulfilled, then there is no right to enforce any obligation under the contract which is

18   dependent on the condition precedent occurring.

17

1    A party which might otherwise be held in breach may, therefore, establish the

2    affirmative defense of failure of a condition precedent by proving that (1) there were

3    one or more conditions precedent to its performance; and (2) at least one of those

4    conditions precedent never occurred.  If a party proves this as to a breach of contract

5    claim asserted against it, then you must find that party did not breach the contract.

6    **2.      Affirmative Defenses Asserted by Open Solutions**

7    Open Solutions asserts the following additional affirmative defenses: (1)

8    estoppel; and (2) waiver.

9    **Estoppel.**  Estoppel is misleading conduct by one party which results in

10   prejudice to the other.  In the absence of prejudice, estoppel does not exist.

11   To establish the defense of estoppel, Open Solutions must prove two elements:

12   (a)    Palmetto Health did or said something that was intended or calculated to

13          induce Open Solutions to believe in the existence of certain facts and to

14          act upon that belief; and

15   (b)    Open Solutions was influenced by that statement or act to the extent that

16          it actually changed its position or did some act which injured Open

17          Solutions and which it otherwise would not have done.

18   **Waiver.**  Waiver is the intentional relinquishment of a known right.  It may be

19   implied from the circumstances indicating an intent to waive.  An implied waiver

1  results from acts and conduct from which an intentional relinquishment of a right

2  might reasonably be inferred.

3          Strict and full performance of a contract by one party may be waived by

4  the other party, in which case there is, to the extent of the waiver, no right to damages

5  for the failure to perform strictly or fully.  Either party to a contract may waive any

6  of the provisions made for its benefit.  If you find that the parties agreed to change any

7  deadlines for performance, then you must find that any deficiencies as to timely

8  performance that occurred before the change do not constitute a breach of the contract

9  because they have been waived.

10         An unexplained delay in enforcing a contract, such as by bringing a lawsuit,

11  may constitute evidence of waiver and acquiescence in nonperformance.  The right to

12  prosecute a breach of contract action may be waived if the party which has the right

13  acts in such a manner as to lead the other side to believe that the right has been

14  relinquished.  In other words, once a breach of contract occurs, the non-breaching

15  party must enforce its rights or lose them.  Once a right is waived, the waiver cannot

16  be withdrawn even if subsequent events prove the right waived to have been more

17  valuable than had been anticipated.

18         A default in the performance of a contract may be waived.  If you find that

19  Open Solutions has proven that Palmetto Health acted in such a way as to waive its

1  rights to enforce the breach of contract, then your verdict must be for Open Solutions

2  on this issue.

3  **Shifting burdens of proof.**   When I introduced the concept of affirmative

4  defenses, I mentioned that the burden of proof with respect to an affirmative defense

5  rests on the defending party.  In other words, the burden of proof shifts from the party

6  asserting the claim to the party asserting the defense. The concept of a shifting burden

7  of proof can be confusing, so I want to explain it in a bit more detail.

8  Each side has the burden of proving all the elements of its claims.  This is a

9  "preponderance of the evidence" burden, which I have already explained.  Thus, for

10  example, for Palmetto Health to succeed on its Breach of Contract claim, it must prove

11  all elements of that claim by a preponderance of the evidence.  The same is true of

12  Open Solution's claim for Breach of Contract: to succeed Open Solutions must prove

13  each element of its claim by a preponderance of the evidence.  If a party does not

14  satisfy that burden, you need not decide anything else as to that particular claim.

15  If one of the parties proves all the elements of its breach of contract claim, then

16  you need to consider any affirmative defenses asserted by the other party.  It is at this

17  point that the burden of proof shifts because the party asserting an affirmative defense

18  bears the burden of proving that defense by a preponderance of the evidence.

1    **C.    DAMAGES**

2    If you find that one of the parties has proved that the other breached the

3    contract, and the other party has not proved an affirmative defense that would avoid

4    all damages as to that claim, then you must determine whether the breach caused

5    damage and, if so, the proper measure or amount of those damages.  I will now give

6    you instructions as to how to determine those damages.

7    Damages means the amount of money that will reasonably and fairly

8    compensate the party for any injury you find was proximately caused by the breach

9    of contract.  If you do not find a party liable for breach of contract, then you do not

10   reach the question of damages as to that party at all.  The fact that I am telling you

11   about the law of damages does not mean that I believe that you will, or should, find

12   either party liable for breach of contract.

13   **Limitation on Damages.**  As I have already explained, Palmetto Health is

14   asserting a claim for breach of contract.  However, the contract places two significant

15   limits on the damages which Palmetto Health may recover for its claim.  I will explain

16   these limits before we go into the remainder of the damages instruction because they

17   affect how these instructions apply to Palmetto Health's claim.

18   There is also a third potential limit which is based on Section 4.3 of the

19   Agreement.   The parties disagree as to the meaning of this provision.  You will,

1    therefore, need to determine the meaning of this Section and its impact on Palmetto

2    Health's claim for damages.  Before I explain your duties as to this possible limitation,

3    I will explain the other two limitations to you.

4    First, the contract limits the categories of damages which Palmetto Health may

5    recover under the breach of contract claim.  Although the contract uses a number of

6    different words to cover the categories of damages excluded, the only exclusions you

7    need to be concerned about are the exclusions of consequential or incidental damages.

8    In a moment, I will explain the categories of damages generally available for

9    a breach of contract claim.  These instructions include instructions relating to

10   consequential and incidental damages because the contractual limitation on damages

11   only applies to Palmetto Health's claim for damages.  Thus, if you find Palmetto

12   Health breached the contract, you will consider and may award damages to Open

13   Solutions for all of the categories of damages including incidental and consequential

14   damages.  However, because it is subject to the contractual limitations on damages,

15   you may not consider or award consequential or incidental damages to Palmetto

16   Health in the event you find that Open Solutions breached the contract.

17   There is a second contractual limitation on damages which also applies to

18   Palmetto Health's claim for breach of contract.  This limit sets a maximum amount of

19   damages which Palmetto Health may recover.  This maximum is described as the

"amount of License Fees actually paid" to Open Solutions as of the time of any breach. There is no dispute that Palmetto Health "actually paid" Open Solutions a total of $363,401 and that this payment was made on or near the date the contract was entered. Thus, the "amount paid to Open Solutions" as of the date of any breach is not in dispute. The parties do, however, disagree as to whether the entire amount which Palmetto Health paid was paid for "License Fees."

Palmetto Health maintains that the phrase refers to the full amount reflected on the Initial Purchase Order (Exhibit A to the Agreement) and, therefore, that the cap on damages it may recover is $363,401. Open Solutions maintains that "License Fees" does not include fees paid for certain line items on the purchase order such as for implementation services (Section A, Item 14 of the Initial Purchase Order) and maintenance services (Section C, Item 2 of the Initial Purchase Order) and, therefore, argues the cap is $274,439.

Because the parties' intent is not clear simply from reading the contract, you will need to decide two things. First, you will need to decide what the contractual definition of "License Fees" is intended to include. Second, you will need to apply that definition to the Initial Purchase Order in order to determine the actual dollar amount of the cap on damages.

1    To assist you in this duty, I will repeat the contractual definition of "License

2    Fees" here, which is found in Section 3.1 of the Agreement. Remember, however, the

3    instructions I have already given you as to how you should interpret the meaning of

4    a term in the contract which includes consideration of the entire contract as well as

5    other evidence of the parties' intent.

6    The contract defines "License Fees" to include the "initial license fee for the

7    Licensed Software, Third Party Hardware and hardware purchased from [Open

8    Solutions] as set forth in the Initial Purchase Order[.]" The Initial Purchase Order is

9    attached to the Agreement as Exhibit A and includes a number of different line items,

10   some of which show a price and some of which do not.

11   I give you this instruction first because it may impact how you approach the

12   damages question in the event you find that Open Solutions breached the contract.

13   This is because you will need to decide both what the total cap on damages is and

14   what actual damages Palmetto Health suffered. Once you have determined these

15   things, you may only award the lower of the two. You may find that it is easier to

16   resolve one of these questions than the other. It is entirely up to you to determine in

17   which order to approach these questions. You must, however, award no more than the

18   lower of the cap on damages, and the actual damages, if any, to which you find

1    Palmetto Health is entitled. As I have mentioned, the cap will fall somewhere

2    between $274,439 and $363,401.

3        **Examples.** Let me give you an example using some fictitious dollar amounts.

4    We'll start with an assumption that you find Open Solutions breached the contract and

5    address the question of damages first, finding Palmetto Health damaged in the

6    amount of $100. If you decide the cap on damages is $200, then you may award

7    Palmetto Health the full $100 in direct damages because this amount is below the cap.

8    However, if you find the cap on damages is only $50, then that is all that you may

9    award even though you find Palmetto Health actually suffered a larger amount in

10   direct damages.

11       If you find it the easier question, you might, instead, start by deciding the

12   amount of the cap. Here, let's assume that the cap is $100. If, in addressing the

13   amount of direct damages, you conclude that they total at least $100, then you would

14   not need to decide the precise amount as you may not award more than the cap. On

15   the other hand, if the direct damages are less than $100, you would need to decide the

16   precise amount.

17       As I mentioned a few minutes ago, there is a third potential limit on damages.

18   This limit derives from Section 4.3 of the Agreement which states that, in the event

1  of termination, "all monies paid or due or owing to [Open Solutions] by [Palmetto

2  Health] shall be deemed non-refundable."

3       Open Solutions argues that because Palmetto Health terminated the contract,

4  this provision prohibits it from recovering any damages.  Palmetto Health argues that

5  the provision only prohibits a refund, not recovery of damages which it may recover

6  subject to the other limitations we have already discussed.  Because the meaning of

7  this provision of the contract is unclear, you will need to interpret the meaning based,

8  as I have already explained, on the contract as a whole and other permitted evidence

9  of the parties' intent.

10       On the verdict form, I will ask you to do this in two steps.  First, I will ask you

11  what damages you find Palmetto Health is entitled to if you do not apply this

12  provision.  Second, I will ask you whether you find the provision precludes Palmetto

13  Health from any recovery.  You will need to answer both questions, even if you find

14  the answer to the second question otherwise precludes recovery.

15       **Components of Damage for Breach of Contract.**  Damages for breach of

16  contract are measured as of the time of the breach or violation.  These damages may

17  consist of:

18       (a)    direct damages (expectation and reliance);

19       (b)    consequential damages; and

1      (c)    incidental damages.

2      I will explain each of these components in detail. Remember, however, that

3    Palmetto Health is limited to the direct measure of damages and may not recover

4    consequential or incidental damages.

5      **Burden of Proof.**  To recover damages for breach of contract, the non-

6    breaching party must prove by a preponderance of the evidence the amount of any

7    damages to be awarded. The evidence must give you a sufficient basis to estimate the

8    amount of damages to a reasonable certainty. Although damages may be based on

9    reasonable and probable estimates, you may not award damages on the basis of guess,

10   speculation, or conjecture.

11      **Direct Damages – Expectation Measure.**  Damages for breach of contract are

12   intended to place the non-breaching party, so far as can be done by money, in the

13   same position it would have been in had the contract been fully performed. The

14   primary measure or component of damages is, therefore, the "expectation" measure.

15      To determine this component, you should first determine the position the

16   non-breaching party would have been in if the breaching party had fully performed

17   the contract and assign a monetary value to that position. You should then determine

18   the position the non-breaching party was in at the time of the other party's breach of

27

1    the contract and assign that position a value.  The difference between these two values

2    is the amount you should award in actual damages.

3          I'm going to give you a two very simple examples of how you would measure

4    this.  Let's assume you hire someone to put a new roof on your house and you ask for

5    the 40-year warranty shingles.  The price for this job is $4,000, and that is also what

6    the completed job would be worth.  The roofing job is done, but only with 30-year

7    warranty shingles, which you could have had done for $3,000.  The difference in value

8    between what you expected and what you received is $1,000.  This would be the

9    amount of damages under an expectation measure.

10          Now let's look at it from the roofer's side.  Suppose you tell the roofer you will

11    not honor the contract and you do so before the roofer spends any money on labor or

12    supplies. Now it is the roofer who is injured. The roofer's injury is the difference

13    between what it would have cost him to perform the work and what you would have

14    paid.  Assume he would have had to pay laborers $1000 and materials would have

15    cost $2000.   In this case, the roofer's expectation injury is the $1,000 he would have

16    had left after paying labor and materials.

17        **Reliance Damages.**  As an alternative to the expectation measure, you may use

18    a reliance measure in determining direct damages.  In determining reliance damages,

19    you look not to what was expected, but to what was lost.  This measure seeks to

1    compensate the non-breaching party for any losses that it incurred because it relied

2    upon the other party to perform the contract.  These damages should put the non-

3    breaching party in a position as if it had never entered into the contract.  To recover

4    under this measure, the party seeking damages must establish the fair and reasonable

5    value of the loss it sustained.

6         I'll give you another simple example.  Assume someone offers to sell you new

7    curtains for a particular price and you pay that price for the curtains.  Later, the curtain

8    seller tells you he will not deliver the curtains.  In this situation, you have lost the

9    value of what you paid for the new curtains because you paid it in reliance on the

10   promise of receiving the new curtains.  The amount you paid for the curtains would

11   be the reliance measure of damages.

12        **Consequential and Incidental Damages.**  In addition to the direct damages

13   which I have just explained, a party may also suffer what we call consequential and

14   incidental damages.  In this case, you will only be asked to consider these categories

15   of damages if you find that Palmetto Health breached the contract causing damage to

16   Open Solutions.  This is because the contractual limitation on damages applies only

17   to Palmetto Health.

18        Consequential damages may be awarded in addition to direct damages if the

19   party seeking them, here Open Solutions, proves that the damages were reasonably

1  foreseeable to the breaching party as the natural and probable result of its breach.  If

2  you find such damages appropriate, your award may include the fair and reasonable

3  value of these consequential damages.

4      I'll use another roofing example.  Let's say that your new roof is not only not

5  the roof you asked for, but was also improperly installed resulting in a leak which

6  ruins your ceiling.  It is reasonably foreseeable that an improperly installed roof will

7  cause this sort of damage.  Thus, you might, in addition to receiving your expectation

8  damages (difference in value and cost to fix the roof itself), recover for the cost of

9  repairing your ceiling.  This additional amount is considered consequential damages.

10      Incidental damages are reasonable expenses caused by the breach or violation.

11  For example, in my prior example, incidental costs would include the immediate cost

12  of having someone put tarps over the damaged part of the roof so that it does not cause

13  even more harm.

14      If you find that a party reasonably incurred costs either in responding to the

15  other party's breach or in securing the benefit that the other party's performance was

16  to have provided, then you may award the fair and reasonable value of those costs as

17  incidental damages.

18      **Combined Award.**  As I will explain when we get to the verdict form, I will

19  first ask you to decide whether either party is liable for breach of contract and, if so,

1     which party.  If you decide one of the parties has proven the other is liable for breach

2     of contract, then you will be asked to state the total amount of damages suffered by

3     the injured party.  While you may find that neither party breached the contract, you

4     may not find that both did so.  This is because liability may only be imposed on the

5     first party to commit a material breach which breach has not been waived or otherwise

6     excused for reasons I have just explained.

7          If you find that Open Solutions committed a breach of contract causing damage

8     to Palmetto Health, then you will consider only direct damages, and award the amount

9     of those damages up to the contractual limitation on damages as I explained a few

10    minutes ago.  In addition, you will also be asked to decide whether Section 4.3 of the

11    contract precludes recovery of damages.

12         If you find Palmetto Health committed a breach of contract causing injury to

13    Open Solutions, then you will consider direct, consequential and incidental damages

14    when you decide how much to award Open Solutions in damages. This award will not

15    be subject to any cap or maximum.  In either event, you will express the award as a

16    single amount having taken all of my instructions into consideration.

17         I want to emphasize that the restrictions placed on the damages which Palmetto

18    Health may recover and my related instructions are simply the result of a contract to

1  which Palmetto Health agreed.  The restrictions in no way suggest any improper

2  action by any party or how you should decide any claim.

### III.  DELIBERATIONS AND VERDICT

4  **Election of Foreperson.**  When you retire to the jury room, you should first

5  elect a foreperson.  The foreperson you select will preside over the deliberations and

6  speak for the jury here in court.

7  **Rules for Deliberation.**  After electing your foreperson, you should discuss the

8  case with your fellow jurors to reach agreement if you can do so.  Your verdict as to

9  each claim  must be unanimous.

10  Each of you must decide the case for yourself, but you should do so only after

11  you have considered all the evidence, discussed it fully with your fellow jurors, and

12  listened to your fellow jurors' views.

13  Do not be afraid to change your opinion if the discussion persuades you that

14  you should.  But do not come to a decision simply because other jurors think it is

15  right.

16  It is important that you attempt to reach a unanimous verdict but, of course,

17  only if each of you can do so after having made your own conscientious decision.  Do

18  not change an honest belief about the weight and effect of the evidence simply to

19  reach a verdict.

1       Remember at all times that you are not partisans.  You are judges - judges of

2    the facts.  Your sole interest is to seek the truth from the evidence in the case.

3       **Consideration of Evidence**.   Your verdict must be based solely on the

4    evidence and on the law as I have given it to you in these instructions.  However,

5    nothing that I have said or done is intended to suggest what your verdict should be --

6    the verdict is entirely for you to decide.

7       Remember also that the arguments and statements of the attorneys are not

8    evidence.  If you remember the facts differently from the way the attorneys have

9    stated them, you should base your decision on what you remember.

10       **Return of Verdict**.  After you have reached a unanimous agreement on a

11    verdict, your foreperson will fill in the form that has been given to you, sign and date

12    it and advise the court security officer outside your door that you are ready to return

13    to the courtroom.

14       **Communicating with the Court**.  If it becomes necessary during your

15    deliberations to communicate with me, you may send a note through the court security

16    officer, signed by your foreperson or by one or more members of the jury.  No

17    member of the jury should ever attempt to communicate with me except by a signed

18    writing; and I will communicate with any member of the jury on anything concerning

19    the case only in writing, or orally here in open court.  Remember that you are not to

1    tell anyone -- including me -- how the jury stands, numerically or otherwise, until after

2    you have reached a unanimous verdict or have been discharged.

3    **Other Communications and Research.**  I know I have given you these

4    instructions many times already, but I repeat them now because they are so important.

5    As during the earlier portions of the trial, you may not, during deliberations,

6    conduct any independent research about this case, the matters in the case, and the

7    parties involved in the case.  In other words, you should not ask anyone other than me

8    or consult dictionaries or reference materials, search the internet, website, blogs, or

9    use any other electronic tools to obtain information about this case or to help you

10   decide the case.  Please do not try to find out information from any source outside the

11   confines of this courtroom. If you have a question, you must direct it to me and I will

12   decide how it should be answered.

13   Many of you use cell phones, Blackberrys, the internet, and other tools of

14   technology.  You must not talk to anyone about this case or use these tools to

15   communicate electronically with anyone about the case.  This includes your family

16   and friends.  You may not communicate with anyone about the case on your cell

17   phone, through e-mail, Blackberry, iPhone, text messaging, or on Twitter, through any

1    blog or website, through any internet chat room, or by way of any other social

2    networking websites, including Facebook, My Space, LinkedIn, and YouTube.

3

4