IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Palmetto Health Credit Union, | ) | C/A No. 3:08-cv-3848-CMC |
| | ) | |
| Plaintiff, | ) | **OPINION AND ORDER** |
| v. | ) | **ON PETITION FOR ATTORNEYS'** |
| | ) | **FEES, COSTS, AND EXPENSES** |
| Open Solutions Inc., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on petition by Open Solutions Inc. ("Open Solutions") for attorneys' fees, costs, and expenses pursuant to Section 11.8 of a contract signed by the parties ("the Agreement") and Rule 54 of the Federal Rules of Civil Procedure. Dkt. No. 176. Specifically, Open Solutions seeks fees of $880,827.50 and reimbursement of $127,809.20 for its costs and expenses. *Id.* and Dkt. No. 180-1. Palmetto Health Credit Union ("Palmetto Health") has responded in opposition. Dkt. No. 179.

This petition follows the close of nearly two years of litigation between Palmetto Health and Open Solutions, arising from their relationship as software service provider and client. Palmetto Health initiated the action based upon the Agreement through which Open Solutions agreed to provide computer programs, hardware, and related services. Palmetto Health ultimately asserted ten causes of action against Open Solutions. Open Solutions, in turn, asserted five counterclaims against Palmetto Health.

The litigation ended in a jury verdict against Palmetto Health on its claim for breach of contract and for Open Solutions on its corresponding counterclaim. All other causes of action by both parties were disposed of on motion for summary judgment or by judgment as a matter of law.

1

For the reasons stated below, the court grants in part Open Solutions' petition and awards $748,703.38 in attorneys' fees and $108,637.82 in costs and expenses, reflecting a 15% reduction of Open Solutions' request.

**BACKGROUND**

Palmetto Health originally filed this action in state court and characterized the action as one for a declaratory ruling. Dkt. No. 1-1. Open Solutions timely removed the action to this court based on diversity jurisdiction, 28 U.S.C. § 1332. Dkt. No. 1. Shortly thereafter Open Solutions moved to dismiss Palmetto Health's declaratory judgment action. The court granted this motion in part because "the complaint [was] mischaracterized solely as a declaratory judgment action despite seeking substantial damages for alleged breach of contract." Dkt. No. 18. Palmetto Health amended its complaint to assert ten causes of action against Open Solutions.[1] Dkt. No. 19. Open Solutions replied asserting five counterclaims against Palmetto Health.[2] Dkt. No. 21.

During the course of the litigation the parties filed cross-motions to dismiss and cross-motions for summary judgment as well as several other motions. The complexity of the litigation is evidenced by the number of docket entries before trial started: 141. Pretrial rulings left three corresponding claims and counterclaims: (1) breach of contract; (2) breach of covenant of good faith and fair dealing; and (3) violation of Connecticut Unfair Trade Practices Act. Dkt. No. 107.

---

[1] Those causes of action included (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) breach of express warranty; (4) fraud; (5) breach of contract accompanied by fraudulent act; (6) negligent misrepresentation; (7) unfair trade practices; (8) rescission; (9) unjust enrichment/restitution; and (10) declaratory judgment. Dkt. No. 19.

[2] The counterclaims included (1) breach of contract; (2) breach of duty of good faith and fair dealing, (3) violation of Connecticut Unfair Trade Practices Act; (4) violation of South Carolina Unfair Trade Practices Act; and (5) unjust enrichment. Dkt. No. 21. The third and fourth causes of action were stated in the alternative.

2

Rulings during trial left only the claim and counterclaim for breach of contract for resolution by the jury. The jury returned a verdict in favor of Open Solutions, finding that Palmetto Health had breached the contract, but awarded Open Solutions no damages.[3] Dkt. No. 165.

**DISCUSSION**

Through its petition Open Solutions' seeks an award of attorneys' fees, costs, and expenses pursuant to the Agreement. Palmetto Health opposes the award arguing that Open Solutions is not contractually entitled to an award or, in the alternative, that the award it seeks is unreasonable.

**I.    AVAILABILITY OF ATTORNEYS' FEES, COSTS, AND EXPENSES AWARD BY CONTRACT**

Under the traditional American rule, each party to a lawsuit is responsible for its own litigation expenses including attorneys' fees. *Alyeska Pipeline Co., v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). This rule may, however, be modified by contract or statute. In this case, the parties were signatories to an agreement containing the following provision:

> 11.8 Governing Law; Attorney Fees. The Agreement, and any disputes arising hereunder, shall be governed, interpreted, construed and enforced in all respects in accordance with the laws of the State of Connecticut except for its conflicts of laws rules. The prevailing party in any action to enforce this Agreement will be entitled to recover its costs and expenses including, without limitation, reasonable attorneys' fees.

Agreement § 11.8. To be entitled to an award under the Agreement, Open Solutions must show that it was (1) a prevailing party (2) in an action to enforce the Agreement. The court concludes that Open Solutions was a prevailing party but that some of its counterclaims were not actions "to enforce [the] agreement," and are, therefore, not covered by the fee-shifting provision of the

---

[3] Open Solutions had received $375,344.00 under the Agreement prior to Palmetto Health's institution of this action. Dkt. No. 1-1 ¶ 9. The result of the verdict was that Open Solutions was entitled to keep what it had received.

3

Agreement.

### A. Prevailing Party

This is a diversity action based on a contract controlled by Connecticut law. Agreement § 11.8 ("The Agreement, and any disputes arising hereunder, shall be governed, interpreted, construed and enforced in all respects in accordance with the laws of the State of Connecticut."). Therefore, the contract including the provision on attorneys' fees, costs, and expenses is to be interpreted using the referenced state's law. *See Western Insulation, LP v. Moore*, 362 Fed. Appx. 375, 379 (4th Cir. 2010) (holding that state law definition of prevailing party controlled when the source of the party's entitlement to fees was a contract controlled by state law rather than a federal statute); *Fox v. Thomaseec*, No. 98-2800, 1999 WL 311482, at *2 (4th Cir. May 18, 1999) ("In diversity cases, state law is ordinarily followed to determine whether fees are recoverable."). The court concludes that "prevailing party" should be defined by state law and, in light of the choice of law provision, the relevant state law is Connecticut law.

Connecticut law broadly defines "prevailing party" as a party "in whose favor a judgment is rendered, regardless of the amount of damages awarded." *Simms v. Chaisson*, 890 A.2d 548, 552 (Conn. 2006) (quoting *Wallerstein v. Stew Leonard's Dairy*, 780 A.2d 916, 919 (Conn. 2001)). Under this definition, the jury's verdict, that Palmetto Health was in breach rather than Open Solutions, renders Open Solutions a prevailing party despite the absence of a damages award. Palmetto Health characterizes Open Solutions' success on the sole counterclaim which was presented to the jury as a hollow victory given the jury's failure to award damages. The court disagrees and concludes Open Solutions achieved substantial success in light of its successful defense of claims through which Palmetto Health sought (1) over $345,000 in direct damages and

4

an unspecified amount of consequential damages (all to be trebled under one cause of action and subject to an award of punitive damages under another), (2) voiding of the contract (and, consequently, avoidance of contractual limitations on damages), and (3) attorneys' fees.[4] Open Solutions was also successful in obtaining enforcement of contractual limitations on damages (although the court did not accept all of Open Solutions' arguments as to contractual limitations on claims and damages) through rulings prior to and during trial. Only one of Palmetto Health's causes of action survived for resolution by the jury which found for Open Solutions on that claim and Open Solutions' corresponding counterclaim. Thus, Open Solutions was 100% successful in defending multiple claims through which Palmetto Health sought substantial affirmative relief including an award of attorneys' fees which, absent evidence to the contrary (and none is offered), the court presumes would have been similar to the fees sought by Open Solutions.[5] The court, therefore,

---

[4] The original complaint sought a "declaration" that "[Open Solutions] must refund to [Palmetto Health] all amounts paid to [Open Solutions] under the Agreement and reimburse [Palmetto Health] for all amounts spent on staff time on the project and necessary equipment upgrades" as well as an award of "attorneys' fees, expenses and costs for bringing this action." Dkt. No. 1-1 at 5 Demand ¶¶3,4. The amount paid under the Agreement was specified as $375,344.00. *Id.* at 2 ¶ 9. This complaint was dismissed with leave to replead.

The amended complaint asserted ten causes of action through which Palmetto Health sought essentially the same relief, as well as trebling of damages under an unfair trade practices claim (asserted, alternatively, under South Carolina and Connecticut law). It also asserted a fraud claim which arguably would have supported an award of punitive damages, although no such damages were expressly sought. The fraud claim might also have resulted in defeating contractual limitations on damages. The court granted summary judgment as to some claims asserted in this complaint including the claims for fraud and violation of the South Carolina Unfair Trade Practices Act.

In its pretrial brief, Palmetto Health identified $473,298.00 in direct and consequential damages which it maintained were available under each of the then-surviving theories. In addition, it asserted it was entitled to attorneys' fees and costs as to all claims, punitive damages under the Connecticut Unfair Trade Practices Act claim, prejudgment interest on the contract claim, and declaratory relief.

[5] Palmetto Health's characterization of this case as one of "dueling plaintiffs" is arguably inaccurate. Dkt. No. 179 at 7. By operation of Rule 13(a)(1), Open Solutions was compelled to

5

concludes that Open Solutions was a "prevailing party" under Connecticut law.

### B.     Actions to Enforce the Agreement

Palmetto Health argues that the scope of the contractual attorneys' fees provision limits the work for which Open Solutions may recover fees. Dkt. No. 179 at 26 (arguing Open Solutions is not entitled to fees relating to "all manner of non-contractual claims"). As Palmetto Health notes, the Agreement provides for a fee award to the "prevailing party in an action *to enforce this Agreement*." Agreement § 11.8 (emphasis added).

Notably, the provision does not refer to the type of claim used to "enforce the Agreement." Instead, it refers to the nature of the overall *action*. In its initial complaint, Palmetto Health characterized the action as an action to declare rights under the Agreement. Thus, the action was instituted as one to enforce the Agreement. Consequently, any defense of the original complaint fell within the attorneys' fee provision. Although the amended complaint asserted ten distinct claims, all sought relief directly related to the Agreement including (1) a declaration that Open Solutions was in breach; (2) damages for non-performance, (3) damages for torts or statutory violations dependent on duties arising from or relating to the Agreement; and (4) voiding of the Agreement based on a fraud theory.

Had Palmetto Health been successful on certain of these claims, it might fairly be argued that

---

plead any potential counterclaims it had against Palmetto Health in its answer to Palmetto Health's lawsuit. Open Solutions should not be penalized in the "prevailing party" analysis for not being awarded damages on a compulsory counterclaim. *See e.g.*, *Tax Track Sys. Corp. v. New Investor World, Inc.*, 478 F.3d 783-90 (7th Cir. 2007) (affirming an award of attorneys' fees pursuant to a contractual fee-shifting provision to defendant that successfully defended against plaintiff's claim even though it lost on its compulsory counterclaims); *Dagan v. CFC Group Holdings Ltd.*, No. 00 Civ. 5682CBM, 2004 WL 856539, at *6-10 (S.D.N.Y. April 21, 2004) (finding defendant a "prevailing party" despite losing on counterclaims because counterclaims were merely "defensive" and defendant had successfully defended against plaintiff's claims).

6

Palmetto Health was not entitled to fees as to these claims because it was not "enforcing" the Agreement although the claim was related to the Agreement. This is particularly true to as to the claim for fraud to the extent the relief sought was to void the contract. It is also true, at least to some degree, as to the claims under the Connecticut and South Carolina Unfair Trade Practices Acts, because the rights to be enforced were dependent in part on the statutes, not solely on the Agreement. Thus, to the extent dependent on the statutes, these claims were not intended to enforce the Agreement (though the *action* as a whole might still be so characterized). In short, had Palmetto Health succeeded on some of these claims, its fees may have been reduced because the particular claims fell outside the fee-shifting provision.[6]

In contrast, Open Solutions' *defense* of all claims asserted by Palmetto Health was necessary to its enforcement of the Agreement. For example, Open Solutions could not enforce the Agreement without first overcoming Palmetto Health's attempt to void the Agreement through its fraud claim. Similarly, Open Solutions' defense of certain claims was based on enforcement of contractual choice of law provisions while its defense of many of Palmetto Health's damages demands was based on contractual limitations. As a factual matter, it was also unlikely that Open Solutions could have succeeded in defending the claim for breach of contract without defeating Palmetto Health's other claims. For all of these reasons, the court concludes that Open Solutions' defense of all of Palmetto Health's claims constitutes "enforcement" of the Agreement.

Open Solutions' pursuit of its successful counterclaim for breach of contract, likewise,

---

[6] In its trial brief, Palmetto Health took the position that it was entitled to attorneys' fees under the Agreement for all three of its then-remaining claims (breach of contract, violation of the duty of good faith and fair dealing under Connecticut law, and violation of the Connecticut Unfair Trade Practices Act).

7

constitutes enforcement of the Agreement. The same is not true as to Open Solutions' other counterclaims. Even if compulsory and related to the Agreement, pursuit of these claims was not entirely necessary to enforcement of Open Solutions' rights under the Agreement. This is particularly true to the extent Open Solutions sought damages beyond future ("maintenance") payments under the contract. Although this is balanced to some degree by the general nature of the action (an "action to enforce this Agreement"), the court concludes that Open Solutions' fees and expenses relating to pursuit of its non-contractual counterclaims are not subject to the Agreement's fee-shifting provision and, therefore, concludes that Open Solutions' fee award should be reduced.[7]

## II.    REASONABLENESS OF ATTORNEYS' FEES SOUGHT

Having found that Open Solutions is a prevailing party whose defenses and contractual counterclaims were subject to the fee-shifting provision, the court must determine whether the fees and costs properly claimed under the Agreement are reasonable. *See LPP Mortg., Ltd. v. Lynch*, 686 A.3d 157, 168 (Conn. App. Ct. 2010). An attorneys' fee applicant bears the burden of proof as to its request. *See Jacques All Trade Corp. v. Brown*, 752 A.2d 1098, 1104 n.4 (Conn. App. Ct. 2000). "Whether any award is to be made and the amount thereof lie within the discretion of the trial court, which is in the best position to evaluate the particular circumstances of a case." *LaMontagne v. Musano, Inc.*, 762 A.2d 508, 510 (Conn. App. Ct. 2000).

Neither party has directed the court to Connecticut law governing assessment of reasonableness in a contractual fee-shifting case. Nor has the court found case law on this issue. Consistent with the parties' memoranda, however, the court finds the two-step model used in

---

[7] Open Solutions was also unsuccessful on these counterclaims, which provides an additional reason to deny fees for work relating to these counterclaims.

8

statutory fee-shifting cases a useful guide.[8]

### A.     Lodestar Calculation

"[T]he initial estimate of a reasonable attorneys' fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. . . . The court[] may then adjust this lodestar calculation by other factors." *Laudano v. New Haven*, 755 A.2d 907, 909 (Conn. App. Ct. 2000) (addressing award of attorneys' fees pursuant to statute). The law in Connecticut and the Fourth Circuit is essentially indistinguishable with respect to factors considered in reviewing the reasonableness of a lodestar calculation. *Compare Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978) *with Perez v. D&L Tractor Trailer Sch.*, 981 A.2d 497, 515 (Conn. App. Ct. 2009) (listing the same factors as found in *Barber*). Due to the parties' reliance on *Barber* (*supra* n.8), and Connecticut's acceptance of those factors, the court will use the *Barber* factors in assessing the reasonableness of Open Solutions' petition.

**Presumption.** Open Solutions argues that because it actually paid its attorneys at their customary hourly rates during the course of litigation, the court should find the amount actually incurred presumptively reasonable by virtue of acceptance in the marketplace. Dkt. No. 176-1 at 3. The court finds the reasoning of the Seventh Circuit somewhat persuasive on this point:

> [A]s a matter of the efficient and fair administration of the federal courts, individual scrutiny of line-item entries is neither necessary nor appropriate in contractual fee-shifting cases. Given the fact that the fees were paid by a party who had no reassurance of indemnity, we believe that market considerations normally would render unnecessary resort to the time-consuming examination of individual expenses.

*Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 774 (7th Cir. 2010). This factor weighs in

---

[8] Both parties used this two-step model in arguing for and against the reasonableness of Open Solutions' petition for attorneys' fees. Indeed, both relied specifically on the factors set forth in *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978).

9

favor of finding the fees reasonable but is not sufficient standing alone.

**Rates Sought.** Counsel for Open Solutions provides an affidavit indicating that two attorneys worked on this case, Kevin Hall, Esq. ("Hall") and Todd Carroll, Esq. ("Carroll") as well as paralegals and support staff. Dkt. No. 176-2. The affidavit indicates that Hall's standard billing rates range from $385 to $425 per hour, and Carroll's range from $235 to $295 per hour. Dkt. No. 176-2 at 3. Counsel request the lower of these rates ($385 for Hall and $235 for Carroll) in the petition. Dkt. No. 176-1 at 5. The same is true of paralegals and support staff; their work is ordinarily billed at hourly rates between $85 and $140, but a rate of $85 is requested in the petition. *Id.* Palmetto Health does not dispute the reasonableness of Open Solutions' hourly rates. Palmetto Health does, however, challenge the use of partners, at their correspondingly higher rates, for certain tasks. Thus, while Palmetto Health does not challenge the propriety of the rates set for Hall and Carroll, it does argue for reduction of the award because some work done by Hall and Carroll was either duplicative or could have been done by support staff at a lower rate.

**Hours Sought.** Open Solutions asserts that over a two-year period a total of 3,165.4 hours was spent by attorneys and support staff on this matter. Open Solutions does not seek compensation for services performed by attorneys other than Hall and Carroll.[9] Dkt. No. 176-1 at 12.

In arguing that Open Solutions' attorneys' fee request is unreasonable, Palmetto Health appears to focus on the number of hours for which fees are sought.[10] However, Palmetto Health fails

---

[9] During the course of the litigation, several attorneys in South Carolina, Connecticut, and Washington, D.C. provided support. Open Solutions does not seek reimbursement for the fees of these attorneys, which total $16,553.00.

[10] Palmetto Health also argues that the court should choose not to award attorneys' fees under Federal Rule of Civil Procedure 54(d)(1) because the *Teague* factors mitigate against an award. *See Teague v. Bakker*, 35 F.3d 978, 996 (4th Cir. 1994) (the court may determine not to

to specify the number of hours it believes should be deducted from Open Solutions' request or otherwise identify the amount of the reduction sought.

### B.  Evaluation of the *Barber* Factors.

The court has considered all of the *Barber* factors but finds only some of the factors relevant to the present petition. The factors the court finds relevant are discussed below.[11]

**Time and Labor Required to Litigate the Suit.** In considering the time and labor required to bring this action to a conclusion, this court compares the time and labor necessarily expended relative to successful claims to the time and labor spent on unsuccessful matters. Moving counsel have submitted a detailed accounting of time spent by attorneys and support staff which allows the court to perform this comparison.[12]

---

award costs if that decision is justified by good reasons such as: (1) excessiveness of costs; (2) actions taken by the prevailing party which unnecessarily prolonged trial or injected meritless issues; (3) the fact that the prevailing party's recovery is so small that it is victorious in name only; and (4) the case in question was a close and difficult one)). As discussed in Section I, Connecticut law not federal law applies to the attorneys' fee request in this case rendering the *Teague* factors inapplicable. In any event, application of these factors would not warrant a different result here.

[11]  The twelve *Barber* factors are: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the expertise, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fee awards in similar cases. 577 F.2d at 226.

[12]  Palmetto Health argues that Open Solutions fails to meet its burden of demonstrating a reasonable fee because counsel submitted reconstructed rather than contemporaneous time records. Dkt. No. 179 at 16. The court finds that Open Solutions' reconstruction is based on contemporaneous record keeping (and billing) but is modified to protect information that is subject to attorney-client privilege, the work-product doctrine, or both. *See Webb v. Bd. of Educ. of Dyer City*, 471 U.S. 234, 238 n.8 (1985); Dkt. No. 176-2. Under these circumstances, the court will allow reliance on the reconstructed records. Time spent reconstructing the records is, however, considered in assessing of the reasonableness of the total award sought.

In assessing the time and labor expended by Open Solutions on successful versus unsuccessful claims, the court considers whether: (1) Open Solutions expended significantly more time and labor on its counterclaims than it would have defending itself against Palmetto Health's ten causes of action; (2) Open Solutions expended significantly more time and labor asserting five counterclaims than it would have asserting only its successful breach of contract claim; and (3) the time and labor expended on Open Solutions' behalf was excessive given the nature of the case.

As to the first consideration, the court finds that the legal and factual issues raised by the claims and counterclaims were so intertwined that Open Solutions' assertion of the counterclaims did not add significantly to the costs of litigation, although they may have accounted for some additional fees particularly at the summary judgment stage. For instance, in defending itself against the claim for breach of contract, Open Solutions argued that its obligations under the contract were met or excused due to actions taken by Palmetto Health, which was the essence of Open Solutions' successful counterclaim for breach of contract.[13] As to the second consideration, Palmetto Health's litigation strategy required that Open Solutions defend against ten causes of action. Faced with these claims and under the facts alleged, it was not unreasonable for Open Solutions to respond with five counterclaims, which generally mirrored five of the ten causes of action asserted by Palmetto Health.[14] Nonetheless, for reasons addressed above (Section I.B.), the court concludes that Open Solutions' fees relating to pursuit of its non-contractual counterclaims fall outside the Agreement's

---

[13] At issue in this case was whether delays in software implementation constituted a breach of the Agreement by Open Solutions, or whether Palmetto Health's attempt to terminate the Agreement after the delays had occurred caused a breach.

[14] Palmetto Health asserted breach of contract, breach of implied covenant of good faith and fair dealing, unfair trade practices, and unjust enrichment, all of which were counterclaims asserted by Open Solutions. Dkt. Nos. 19 and 21.

12

fee-shifting provision.

As to the third consideration, the court considers the five categories into which Open Solutions has divided its request.

### 1. Motions and Pleadings

Open Solutions seeks $176,444.50 in fees for 642.7 hours of work relating to the pleadings and substantive motions filed in this action.[15] These aspects of the litigation included the filing of eleven motions, seven of which were filed by Open Solutions. In drafting and responding to the substantive motions, Open Solutions' success rate can be categorized as mixed. It was successful in (1) limiting discovery requests made by Palmetto Health (Dkt. No. 69), (2) compelling production of unredacted board minutes by Palmetto Health (Dkt. Nos. 79 and 82), (3) winning summary judgment as to seven of Palmetto Health's claims (Dkt. No. 107), and (4) limiting evidence presented at trial (Dkt. Nos. 108 and 123). It was unsuccessful in (1) its second motion to dismiss (Dkt. Nos. 20 and 29), (2) its defense against summary judgment as to two of its counterclaims, and (3) repeated attempts to persuade the court to interpret the nonrefundable provision of the Agreement in its favor (Dkt. Nos. 8, 20, 92 and 121). The court finds that this mixed success justifies some reduction in the fee award.

### 2. Discovery

Open Solutions seeks $403,920.00 for 1,329 hours of work relating to discovery in this action. Discovery was extensive and contentious requiring court intervention to resolve a number

---

[15] The hours and amounts sought in Section II.B.1 through 5 are those requested by Open Solutions. The court's ultimate reduction of the fee award is due in part to evaluation of the *Barber* factors but also due to the fact that part of the time spent at each phase of litigation was on claims not covered by the fee-shifting provision of the Agreement as explained in Section I.B.

13

of discovery disputes. Along with written discovery requests, the parties took and defended twenty-two depositions of eighteen witnesses in six states. Dkt. No. 176-1 at 9. Discovery would have been substantially the same whether or not Open Solutions asserted any counterclaims. Both parties were, however, responsible for slowing the litigation process with objections to discovery some of which proved unsuccessful after court intervention. *See e.g.*, Dkt. Nos. 71 and 83. As with other matters, Open Solutions experienced mixed success in the discovery disputes. For example, Open Solutions was only partially successful in defending Palmetto Health's motion to compel. *See* Dkt. No. 71. The court concludes this mixed success justifies some reduction in fees.

        3.     Pretrial Matters

Open Solutions seeks $184,538.50 for 660.1 hours of work relating to pretrial matters in this action. As these hours suggest, significant time was expended by both parties in final preparation for trial including briefing and jury selection. This case required more than the usual time required for briefing due to conflicts of law questions and the court and counsel's lack of familiarity with Connecticut law. The court, therefore, concludes that the majority of the time spent on these pretrial matters was reasonable. In contrast, the court finds some reduction appropriate for objections to deposition designations, which were, in some respects, excessive.[16]

        4.     Trial

Open Solutions seeks $78,546.00 for 315.6 hours of work during the trial in this action. The trial in this case lasted from September 13, 2010, through the close of business on September 21,

---

[16] Palmetto Health argues for reduction of the fee award in light of objections it deems "frivolous and time consuming." Dkt. No. 179 at 20. It does not specify an amount of reduction sought. Open Solutions responds by noting, *inter alia*, that the total time spent with regard to designations and objections was approximately 69 hours (Dkt. No. 175-5), slightly more than a tenth of the time spent in final pretrial preparation.

14

2010, when the jury returned a verdict. The court concludes that no significant extra trial time was spent on the non-contractual counterclaims, and, therefore, the amount sought is reasonable.

### 5. Preparation of Fee Petition

Open Solutions seeks $37,378.50 for 137.1 hours of work preparing the fee petition in this action. While time associated with preparing a fee petition is regularly recovered as part of a fee award, Palmetto Health argues that Open Solutions' request is unreasonable because so much of the work was done by an equity partner, Carroll, who reported 61.2 hours preparing the petition and 35.1 hours preparing the reply brief. Open Solutions' non-traditional staffing in this case was apparently due to the nature of their firm.[17] While Carroll and Hall began litigating this case with Nelson Mullins Riley & Scarborough, LLP ("Nelson Mullins"), they continued working on the case when they joined with another attorney to form a new firm, Hall & Bowers, LLC. Due to the size of the firm, Open Solutions' case was managed by two equity partners, Carroll and Hall. While this non-traditional staffing may suggest that higher rates were charged, Palmetto Health has not demonstrated this to be the case. The rates sought for Carroll, whether for his time while an associate at Nelson Mullins or his later time as a partner with the smaller firm, are the same: $235 per hour. The court has not been provided with Carroll's normal billing rate while at Nelson Mullins, but the rate shown is only slightly higher than the rate charged by that firm for another, apparently junior, associate, Kristen Horne. Dkt. No. 176-1 n.4 (listing Horne's hourly rate as $215). Thus, the use of two partners from a small firm does not appear to have resulted in any increase in the rates charged over what would have been charged had the same attorneys remained

---

[17] In contrast to the more traditional staffing of a case where a partner and an associate will work together, two equity partners, Carroll and Hall, staffed Open Solutions' case.

a partner and associate at the larger firm.[18]  Consequently, it does not justify a reduction in the award.

In sum, analysis of the time and labor spent on this litigation suggests that the total award should be reduced to some degree in light of (1) limited success of some motions; (2) mixed success as to discovery disputes; and (3) some excess in objections to deposition designations.

**Novelty and Difficulty of the Questions Raised.**  The claims in this case were relatively common claims for breach of contract and related tortious activity.  The legal issues raised were, however, complicated by the presence of a choice of law dispute and, ultimately, the requirement to apply Connecticut law.[19]  Factual issues were, similarly complex because the product and service at issue involved software development and complications in implementation covering an extended period of time.  Therefore, even though the legal questions raised were not novel, the context within which they were raised and the need to apply unfamiliar law made this case relatively complex.

**Skill Required to Properly Perform Legal Services Rendered.**  The complexity of the action, discussed above, made it appropriate to utilize two defense attorneys with substantial experience in relatively complex litigation to defend the action and pursue counterclaims.  As noted above, however, the rate charged for the second partner was commensurate with the rate charged by Nelson Mullins for the attorney time as an associate.

---

[18] Any issue with the non-traditional staffing is also balanced, to some degree, by the decision not to seek compensation for some work done by attorneys and staff other than Hall and Carroll.  This includes time for some attorneys and staff at Nelson Mullins, time for attorneys from Shipman & Goodwin LLP and Broderick, Stirn & Regan, and time invested by in-house counsel.  Dkt. No. 176-1 n.4, 5.

[19] These choice of law issues were addressed by counsel for Open Solutions in multiple briefs (Dkt. Nos. 8, 17, 20, 29, 92, and 102) and in several court orders (Dkt. Nos. 30 and 107).

**Customary Fee for Like Work.** Palmetto Health does not challenge the hourly rates requested by Open Solutions; although, as noted above, Palmetto Health does argue that some work could and should have been done by non-attorneys or attorneys with less experience and correspondingly lower rates. *See* Dkt. No. 179 at 23 (arguing that "the bill summary . . . contains many entries for work well-suited for a lower cost paralegal rather than an attorney as well as overstaffing and duplicative entries"). Palmetto Health's concerns are balanced to some degree by Open Solutions' decision to request the lowest end of their attorneys' fee ranges and not to seek recovery for work done by outside attorneys. Nonetheless, the court agrees that more use of paralegals would have reduced the fees sought.

**Amount in Controversy and Results Obtained.** As discussed above (p. 4-6) there was a significant amount in controversy in this case, which Open Solutions' successfully defended against. Therefore, the court concludes that despite being awarded no damages on its affirmative claims, Open Solutions achieved a substantially favorable result.[20]

**Attorneys' Fees Awards in Similar Cases.** Open Solutions has requested an attorneys' fee award of nearly $900,000 in this case. The awards granted in cases cited by Open Solutions are only a fraction of what Open Solutions is requesting here. *GTR Rental, LLC v. DalCanton*, 547 F. Supp. 2d 510, 524 (D.S.C. 2008) (awarding $550,000 in attorneys' fees where plaintiff received significant

---

[20] Open Solutions argues that the court should consider the collateral benefit obtained through this litigation, specifically Open Solutions' successful defense of its reputation. Open Solutions asserts that "the market for providing data-processing software and services to financial institutions is a highly competitive one" and Palmetto Health made allegations that, "if proven, can be ruinous in Open Solutions' industry." Dkt. No. 176-1 at 17. Assuming without deciding that Open Solutions achieved such a collateral benefit, the court declines to find it relevant in applying the *Barber* factors. Moreover, nothing in the contract suggests that such collateral benefit should be considered.

17

damage award at trial); *Summers v. Adams*, No. 3:08-2265-CMC, 2010 WL 2179571, at *7 (D.S.C. May 26, 2010) (awarding $192,000 in attorneys' fees to plaintiff who won a permanent injunction from the court).[21] In its reply Open Solutions cites to one case in the Eastern District of Virginia where the court awarded $1.3 million in attorneys' fees in a commercial contract dispute. *Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship*, No. 1:08cv955(JCC/TRJ), 2010 WL 3064021, at *13 (E.D.Va. July 30, 2010) (awarding fees to a plaintiff who succeeded on claim for breach of contract, was awarded a permanent injunction, and successfully defended against declaratory judgment claims but won no damages award).

Commercial disputes litigated through trial are rare in the District of South Carolina, and awards of attorneys' fees based on contractual provisions rather than statutes are even more rare. Here, the prevailing party, Open Solutions, achieved substantial success by defeating multiple claims through which Palmetto Health sought nearly $500,000 in actual damages subject to possible trebling or the addition of a punitive damage award.[22] Had Palmetto Health prevailed, at least on its contract claim, it would have been entitled to attorneys' fees and costs which would have added substantially to its recovery. Thus, though Open Solutions' recovery on its counterclaim for breach of contract may have netted it no recovery, its successful defense of this action saved it hundreds of thousands of dollars. This constitutes a substantial success which is not out of proportion to the

---

[21] Open Solutions also cites again to the Seventh Circuit's decision in *Metavante* where the court awarded $10 million in attorneys' fees and costs to the plaintiff. 619 F.3d at 771-76. However, in that case the court ruled for the plaintiff on all claims in an oral decision, a degree of success higher than Open Solutions in this case. *Id.* at 758.

[22] Although Palmetto Health does not mention punitive damages in its complaint, it stated in its trial brief that such damages were recoverable under the Connecticut Unfair Trade Practices Act. Dkt. No. 132 at 15.

fees sought, particularly when Palmetto Health's potential recovery of attorneys' fees is considered.

Open Solutions is a prevailing party under the terms of the Agreement and is, therefore, entitled to recover reasonable attorneys' fees expended on actions to enforce the Agreement. Due to the fact that some of its counterclaims fell outside the coverage of the fee-shifting provision of the Agreement and the court's consideration of the *Barber* factors above, the court concludes that Open Solutions' attorneys' fee award should be reduced by 15%.

### III.     COSTS AND EXPENSES

The Agreement in this case allows the prevailing party to "recover its costs and expenses." Agreement § 11.8. Open Solutions seeks reimbursement of $127,809.20 for costs and expenses in addition to its requested attorneys' fees. Dkt. No 176-1 at 21. Palmetto Health argues that several of Open Solutions' expenses are not recoverable because they are not permitted under 28 U.S.C. § 1920. The court disagrees. In this case, Open Solutions is seeking costs and expenses pursuant to a *contractual agreement*, not pursuant to statute. There is no reason, therefore, to limit Open Solutions' recovery to those categories of costs and expenses permitted under 28 U.S.C § 1920.

Open Solutions provided the court with an itemized list of expenses. Dkt. No. 175-5. Under Connecticut law, recoverable litigation expenses "include . . . nontaxable disbursements reasonably necessary to prosecuting the action." *Berry v. Loiseau*, 614 A.2d 414, 437 (Conn. 1992). Upon reviewing the list of expenses, the court concludes that the items listed were reasonably necessary to prosecuting the action. However, for the reasons outlined above in Sections I and II, Open Solutions' request for costs and expenses will be reduced by 15% as well.

### CONCLUSION

The court grants Open Solutions' petition for attorneys' fees, costs, and expenses in part.

This court finds that Open Solutions is entitled to (1) an award of attorneys' fees in the amount of $748,703.38 and (2) costs and expenses in the amount of $108,637.82.

**IT IS SO ORDERED.**

                                                s/ Cameron McGowan Currie
                                               CAMERON MCGOWAN CURRIE
                                               UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
January 4, 2011